

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2002

# Coleman v. Home Depot Inc

Precedential or Non-Precedential: Precedential

Docket No. 00-3496

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Coleman v. Home Depot Inc" (2002). *2002 Decisions*. Paper 643.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/643

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 9, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-3496 and 00-3656

MARY A. COLEMAN

v.

HOME DEPOT, INC.

Mary A. Coleman,Appellant in No. 00-3496
Home Depot U.S.A., Inc.,*Appellant in No. 00-3656

*Pursuant to FRAP 12(a)

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 98-cv-02022)
District Judge: Honorable Mary Little Cooper

Argued: April 25, 2002

Before: BECKER, Chief Judge, SCIRICA and
RENDELL, Circuit Judges.

(Filed: October 9, 2002)

        DAVID A. KRENKEL, ESQUIRE
          (ARGUED)
        Arbus, Krenkel & Monaghan, LLC
        1001 Deal Road
        Ocean, NJ 07712

        Counsel for Appellant/Cross-Appellee
        Mary Coleman


        PATRICK G. BRADY, ESQUIRE
          (ARGUED)
        JOHN M. O'CONNOR, ESQUIRE
        CLARA H. RHO, ESQUIRE
        Carpenter, Bennett & Morrissey
        Three Gateway Center
        100 Mulberry Street
        Newark, NJ 07102

        Counsel for Appellee/Cross-Appellant
        Home Depot U.S.A., Inc.

OPINION OF THE COURT

BECKER, Chief Judge.

Plaintiff Mary Coleman, an African American female, who claims that defendant Home Depot discriminated against her on the basis of race, gender and age when it refused to give her a job in sales and when it terminated her from her position as a cashier, brought suit against Home Depot in the District Court for the District of New Jersey, alleging employment discrimination. The jury found for Home Depot. Coleman's appeal from the judgment of the District Court entered on the jury verdict turns on the District Court's exclusion from evidence of an EEOC Letter of Determination in which the Agency concluded that reasonable cause existed to believe that Home Depot had discriminated against Coleman because of her sex and race in connection with her hiring, request for transfer, and discharge. The District Court excluded the evidence, which was otherwise admissible pursuant to Fed. R. Evid. 803(8)(C), primarily because it found that its probative value was low and that any such value was outweighed by confusion and unfair prejudice. See Fed. R. Evid. 403. Coleman contends that this ruling was an abuse of discretion.

This appeal presents the question whether an EEOC Letter of Determination, which is presumptively probative when not challenged as untrustworthy under Rule 803(8)(C), can nonetheless be excluded due to the

considerations identified in Rule 403. See id. (listing the considerations as "unfair prejudice, confusion of the issues, or misleading the jury, or consideration of undue delay, waste of time, or needless presentation of cumulative evidence"). Although the Circuits are divided on the issue, we conclude that an EEOC Letter of Determination is not per se admissible under Rule 403, and that, like other probative evidence, it may be excluded if the countervailing 403 factors substantially outweigh its probative value. While the District Court found that the letter should be excluded because of the risk of unfair prejudice and confusion, instead we find that other Rule 403 factors -- undue delay and waste of time -- are sufficient on the record to tip the scales in favor of finding that the District Court did not abuse its discretion when it excluded the letter. The judgment of the District Court will therefore be affirmed.

## I. Background Facts

Coleman applied for a position with Home Depot's Lakewood, New Jersey store on July 15, 1996. On her application, she stated that she was applying for"any" position, and represented that she had prior work experience/skills on a cash register, in hardware, plumbing, lumber, paint, and electrical. [SA491]. Within a week of submitting her application, Home Depot called Coleman to its Lakewood store for an interview. Vincent Kobera, the Store Manager, conducted the hiring interview. [SA96].

During the interview, Coleman stated that she was most interested in a sales position, but was told that there was only an opening as a cashier. [A47-48]. She was also told that she would have the opportunity down the line to transfer into a different department. [A48]. Kobera testified that his goal, as an employer, was to "try to put people in where they're going to be most comfortable. I mean when customers come in, they want to deal with someone in electrical who has some working knowledge or some point of reference for that. So, part of the interview process is to try to find that person's -- call it niche, if you like, and where they are going to fit with us. And that's why during

3

the interview, we talk about everything that's on the application." [SA185-186]. During the interview Kobera questioned Coleman about her experience in electrical, plumbing, and hardware as indicated on her application form. [SA97-98].

At the end of the interview, Kobera decided not to offer Coleman a position in sales, but offered her a position as a cashier instead. His decision with respect to sales was based on the fact that during the interview, Mary was "polite, courteous . . . [but] when I questioned her about [hardware], she couldn't answer the questions and even told me that she didn't have a lot of knowledge on that, so that was part of it." [SA184]. In this regard, Kobera testified that the hardware department at Home Depot "is really hand tools, power tools, stationary tools in that very specialized area," but when he asked Mary "if a customer came in and wanted to buy a power tool for a gift and they wanted to buy one of the most versatile tools they could buy, what would she suggest. And Mary said she did not know. And then I asked her the same thing with hand tools . . . and she told me that when she worked at the hardware store, she really didn't get in to the power tool part of the business . . . . she said it was more of a small family business. They carried like nuts and bolts and did like pots and pans type -- like a little mom and pop hardware store." [SA 227-228]. Thus, at the end of the interview, Kobera offered Coleman a position as a part-time cashier, which she accepted on the spot. [SA99-100].

Coleman began working at Home Depot on July 31, 1996. Before actually beginning work, she received training on the use of the cash register system, including the operation of function keys, paperwork associated with certain types of transactions, and procedures on the use of the register drawer and counting to close the register. [SA127; see also Cashier Training Checklist, SA492]. Notwithstanding the training, Coleman received several warnings about her poor job performance as a cashier with respect to handling monies (shortages and overages in her register at the end of the day). [SA102]. Indeed, Coleman received at least nine separate written warnings about her performance in her six month career with Home Depot.

[SA133-134; 135; 136-137; 137-138; 138-139; 147; 142; 145; 150-151]. These performance warnings indicated that future problems with her cash transactions would result in more written warnings, and possibly termination.

Despite her poor performance on the cash register, Coleman asked for a transfer from the cashier position into the Hardware Association position. [SA131-132]. This request was denied. The Assistant Store Manager, Kevin McCann, testified that Home Depot does not transfer employees having performance problems from one department to another:

> [W]e do not transfer associates from area to area if they have performance issues . . . . [H]aving a performance problem, and in her case, a basic skill such as cash handling, which really relates to paying attention to detail and, you know, basic math skills, that could be a problem on the sales floor, as well.

[SA303]. Kobera testified to the same:

> Q: And during the time that you were the floor manager at [the] Lakewood [store], did you ever transfer an individual from a department who was having performance problems as the solution to that problem by putting them in another department?
>
> A: No . . . . it doesn't solve the problem, you don't get to the root of it, you're just moving the problem and letting someone else deal with it.

[SA221].

Home Depot's employee handbook states that after three counseling sessions for the same performance warning, the employee could be terminated. [SA224]. In addition to her six-month performance review, which indicated that Coleman needed improvement, she also received additional training and assistance on the cash register on four or five separate occasions by Jean Amato, an employee at the Lakewood store. [SA158]. Moreover, Anne O'Neil, the Store Customer Service Manager, worked with Coleman to remedy her accuracy problems [SA154-155], as did the head cashier, Sue Gibberson. [SA158]. Despite all this help,

Coleman's performance continued to fall short and she continued to receive written warnings. Ultimately, after a customer called the store to complain that Coleman had short-changed him $10.00, Coleman received her last warning and was terminated. [SA151]. With respect to her discharge, Kobera testified:

We had had like -- by now it was nine or ten write-ups. And we have given her lots of counseling. She had lots of training . . . . We had done that, and [her performance] was affecting the customers. I mean when customers start calling the store and saying I'm not happy . . . there comes a point where we looked at -- I looked at Mary -- Kevin and I, we talked about it. But ultimately it was my decision to look at Mary's performance and say I didn't see that it was going to get any better, giving her another chance wasn't going to correct the problem.

[SA230-231].

II. Procedural History

A. Agency Level

On May 28, 1997, Coleman filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). She claimed that Home Depot discriminated against her on the basis of her sex, race, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000(e), et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. S 621, et seq. by: (i) hiring her as a cashier instead of as a sales associate in the Hardware Department; (ii) refusing to transfer her to a sales associate position within the Hardware Department; and (iii) terminating her employment. [A28]. Following an investigation, the EEOC issued a Letter of Determination on January 26, 1998, in which it concluded that reasonable cause existed to believe that Home Depot had discriminated against Coleman because of her sex and race in connection

6

with Coleman's hiring, request for transfer, and discharge. We rescribe the letter in the margin.1 [A30-32].

The EEOC concluded that there were no facts to substantiate plaintiff 's claim that Home Depot discriminated against her based on her age.

---

1. The letter states, in relevant part:

Evidence reveals that after Charging Party was hired as a cashier, she constantly requested to be transferred to hardware or another sales position in areas in which she was highly experienced. During the same period that she was requesting to be transferred, males with less experience were being hired directly into sales positions. Some of the male applicants had indicated on their employment application that they were applying for available positions and were hired directly into sales positions.

Since Charging Party was hired as a cashier rather than a sales associate, she experienced performance problems. As a result of not being allowed to transfer to a position she was qualified to perform,

Charging Party's employment was affected when her employment was terminated effective February 13, 1997 for not being able to perform the cashier's job.

Evidence reveals that Charging Party had received and [sic] overall rating of "3" on December 15, 1996. In addition, evidence reveals that a similarly situated white employee, who had received warnings for shorting and/or overage, was allowed to transfer to another department.

The evidence as a whole makes it reasonable to conclude that Charging Party was discriminated against because of her sex (Female) and race (Black) with respect to Charging Party's hiring, transfer and/or job assignment and discharge allegation.

* * *

During the course of the investigation, the Commission has uncovered evidence which indicates that Respondent has discriminated against females with respect to hiring and other terms and conditions of employment, i.e., wages and transfers and/or job assignments into sales positions.

Evidence reveals that females were being hired as cashiers at a starting salary of $8.00 regardless of their prior experience. When females applied for an open position, they were placed in the cashier department while males who applied for open positions with no experience in sales were placed in sales jobs at a higher salary.

7

B. The District Court Suit and the Court's
Rationale for Excluding the Evidence

Coleman's civil action alleged that Home Depot had discriminated against her on the basis of her gender and race in violation of Title VII by: (i) hiring her on July 31, 1996 as a cashier instead of as a sales associate and failing thereafter to transfer her from a cashier to sales associate position in the Hardware Department; and (ii) terminating her employment on February 13, 1997.

On June 23, 2000, after the close of discovery and shortly before trial was scheduled, Home Depot moved in limine to preclude Coleman from introducing into evidence at trial the EEOC's determination letter. Home Depot argued that the record did not support the EEOC's findings, which failed to reference any specific evidence, and that, as a result, the probative value of the Determination Letter was outweighed by its prejudicial effect. At the in limine hearing, the District Court delayed ruling on the motion to exclude the report, deciding instead to:

listen to the evidence very carefully, the evidence that is adduced on the plaintiff's case in chief, and I will make a ruling on this before the plaintiff has to rest. So that if all or any part of this EEOC determination is admitted, it's admitted after the Court has had an

Evidence further reveals that males hired as cashiers were subsequently transferred into sales positions. However, the females hired as cashiers who were transferred, were being transferred either to the service desk or refund department, not to sales positions.

Females have systematically been placed in cashiers' position and not given the opportunity to advance into sales positions.

Based on the evidence of record, there is reasonable cause to believe that sex (Female) were [sic] motivating factors in Respondent's decision not to hire and/or transfer qualified females into sales positions at a higher rate of pay.

[A31–32].

8

opportunity to see what reliable evidence there is, to support what the EEOC said.

 *  *  *

I won't exclude the report on the basis that I can't see what evidence the EEOC relied on, but I will test that report against the evidence which is adduced by the plaintiff at trial, not to see whether I am persuaded (that's not my job), not to see whether I am persuaded in the direction that the EEOC determined, but to see whether there is reliable evidence upon which the EEOC determination could reasonably have rested.

[SA9–11].

After considering the testimony and other evidence submitted by Coleman, the District Court granted Home Depot's motion and precluded Coleman from submitting the EEOC Letter of Determination. The District Court reasoned as follows:

Let me give the legal basis for the evidence evaluation first. The law that applies to this determination is straightforward. The United States Supreme Court decided in a 1976 ruling, Chandler v. Roudebush , that EEOC findings are admissible under the hearsay rules -- that is specifically Rule 803(8)(C) -- in a federal trial. The Supreme Court in Chandler did not limit the discretion of the trial judge to consider whether despite the hearsay admissibility of the report itself, the report, nevertheless, should be excluded, "If sufficient negative factors are present." That is a quote from the notes of the Advisory Committee on the proposed rules under Rule 803(8)(C).

Thereupon arose a split of authority in the Circuits, but the Third Circuit, as always, clearly held that it is within the discretion of the District Court to admit or

to refuse to admit the EEOC's findings of fact and its determination on the merits of the charges. That was the Third Circuit decision in Walton v. Eaton Corporation . . . .

* * *

9

  [T]his is a case-by-case determination that must be made. In the jurisprudence that has arisen around the country which has been cited in the parties' briefs, the factors that the Court should consider have emerged and those include whether the report itself presents a danger of unfair prejudice to the defendant, whether time spent during the trial will be unduly lengthened if the report is admitted and the defendant must introduce evidence to expose the weaknesses in the report, thus unduly adding to the length of the trial, what factual basis is stated in the report for both the findings and the conclusions in the EEOC report and whether those factual supports are borne out by the record before the EEOC, and whether the report is conclusory in nature or reflects ample detail and a fair summary of the detail of relevant facts pertaining to the charge. Those are some of the factors that the Courts have weighed in making this case-by-case determination.

  The EEOC report in this case does not contain any footnotes or references to exactly what evidence is being relied upon. It simply states, "evidence reveals" or "evidence as a whole" or "based on the evidence of record." I have reviewed the report line by line in order to determine whether it should be excluded or admitted in whole or in part. I conclude that it must be excluded in whole, that it cannot be redacted or admitted in its entirety without creating the very danger of unfair prejudice and confusion which Rule 403 requires the Court to avoid in making discretionary evidentiary rulings.

  At the heart of my ruling is the core finding of the EEOC report that -- and here I quote from Page 2-- "Evidence reveals that after the charging party was hired as a cashier, she constantly requested to be transferred to hardware or another sales position in areas where she was highly experienced. During the same period that she was requesting to be transferred, males with less experience were being hired directly into sales positions."

10

  One of the bases for that "highly experienced" conclusion is stated above in the EEOC letter. It says, "During her interview, the charging party informed the respondent that she had experience in several areas

such as plumbing, hardware, electrical, paint and lumber. The charging party has more than 15 years sales experience."

There is no indication in the EEOC determination where this factual basis comes from. The Court has now had the opportunity to review the application form which is in evidence, P-15, and it shows that these areas were checked off. However, the countervailing accounts of what was testified to in the interview are not nearly as strong in the trial as stated in the EEOC letter.

Also, the statement that she has more than 15 years sales experience found in the EEOC letter, is not supported even by the application form, P-15 in evidence. If we were to assume it to be truthful and accurate, there is approximately 13 years of experience at the family hardware store listed there. Also, the testimony concerning whether males who had less sales experience were being hired directly into the sales department, is one which is sharply in issue here in the course of the trial and it will be open to each party to argue to this jury whether these males had more or less experience than Ms. Coleman indicated during her application and interview.

The finding of the EEOC Commission is that the evidence as a whole makes it reasonable to conclude that the charging party was discriminated against because of her sex (female) and race (black) with respect to the charging party's hiring, transfer and/or job assignment and discharge. It makes additional findings such as, "Has uncovered evidence which indicates that respondent has discriminated against females with respect to hiring and other terms and conditions of employment, i.e., wages and transfers and other job assignments into sales positions."

* * *

11

All of these findings are not supported by the evidence that has been presented by plaintiff, except for the raw numerical data, as to which I have had to give the jury a limiting instruction as I have admitted that into evidence.

The conclusion of this Court is that substantial evidence has been presented to the jury on the claims brought forward by plaintiff in this case, but it differs from the assertions which are the findings in the EEOC report. For that reason, I find there is little probative value in the EEOC's conclusory statements regarding the same record.

I further find that those conclusory statements regarding the evidence are expressly stated to be the

basis of the EEOC's determination and to admit the determinations without revealing that they are based upon findings that are supported by the evidence in this case, would be, I believe, an erroneous ruling in the sound exercise of this Court's discretion.

This jury would, in effect, be receiving an EEOC determination in the nature of an expert opinion on conclusions which this lay jury is as equipped to reach from the evidence and its own experience and instructions in the law where this jury will have had the opportunity to view all of the evidence and will have the ability to draw its own conclusions from the evidence presented regarding whether Ms. Coleman was or was not subjected to disparate treatment in her assignments and in her termination in this case.

[A5-11] (emphasis added).

The jury returned a verdict in favor of Home Depot. Coleman appeals, arguing that the District Court abused its discretion in excluding the EEOC determination letter from trial.2 The District Court had jurisdiction pursuant to 28

---

2. We note that Home Depot is also a cross-appellant in this case; it appealed the District Court's order precluding Home Depot from presenting evidence relating to Coleman's alleged misrepresentations about her employment history. Since the parties did not brief the issue in the present appeal, and, at all events, in light of our holding that the District Court did not abuse its discretion by excluding the EEOC Letter of Determination, Home Depot's appeal is essentially moot.

12

U.S.C. S 1331. We have appellate jurisdiction based on 28 U.S.C. S 1291.

We review the admissibility of evidence for abuse of discretion. See Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995). "An abuse of discretion is a`clear error of judgment,' and not simply a different result which can arguably be obtained when applying the law to the facts of the case." SEC v. Infinity Group Co., 212 F.3d 180, 195 (3d Cir. 2000) (quoting In re Tutu Well Contamination Litig., 120 F.3d 368, 387 (3d Cir. 1997)). This standard applies to Rule 803(8)(C) and EEOC determination letters. Walton v. Eaton Corp., 563 F.2d 66, 75 (3d Cir. 1977).

III. Discussion

A. Rule 803(8)(C)

Fed. R. Evid. 803(8)(C) provides:

The following are not excluded by the hearsay rule, even though the declarant is not available as a witness . . . . (8) Records, reports, statements or data compilations, in any form, of public offices or agencies,

setting forth . . . (C) in civil actions and proceedings
. . . factual findings resulting from an investigation
made pursuant to authority granted by law, unless the
sources of information or other circumstances indicate
lack of trustworthiness.

The rationale of Rule 803(8)(C) is explicated in the advisory
committee's note as being grounded on a presumption of
reliability of government records. The note explains that it
is "assum[ed] that a public official will perform his duty
properly." Fed. R. Evid. 803(8)(C) advisory committee's note.
As was explained in Zenith Radio Corp. v. Matsushita Elec.
Indus. Co., Ltd., 505 F. Supp. 1125, 1145 (E.D.Pa. 1980),
"the drafters of 803(8)(C) were motivated by a variation on
the theme underlying all hearsay exceptions -- that
circumstantial guarantees of trustworthiness are provided
by the presumption that governmental officials will perform
their duties faithfully. Accordingly, they were agreeable to
the receipt into evidence of governmental agency findings."3

_____

3. See also Melville v. Am. Home Assurance Co., 443 F. Supp. 1064, 1112
(E.D.Pa. 1977) ("The conceptual underpinning for this exception, similar

With respect to EEOC determinations in particular, the
United States Supreme Court itself has held that prior
administrative findings made with respect to an
employment discrimination claim may be admitted, as of
course, pursuant to Fed. R. Evid. 803(8)(C) as evidence at
a "federal-sector trial de novo." Chandler v. Roudebush, 425
U.S. 840, 863 n. 39 (1976).

The principal basis on which government records and
reports may be excluded is the Rule 803(8)(C)
trustworthiness proviso. As the Rule itself states, the
findings are admissible "unless the sources of information
or other circumstances indicate lack of trustworthiness."
Fed. R. Evid. 803(8)(C). The advisory committee's note
explains:

        Factors which may be of assistance in passing upon
        the admissibility of evaluative reports include: (1) the
        timeliness of the investigation; (2) the special skill or
        experience of the official; (3) whether a hearing was
        held and the level at which conducted; (4) possible
        motivation problems . . . . Others no doubt could be
        added.

Fed. R. Evid. 803(8)(C) advisory committee's note (internal
citations omitted). Case law has added to the list of
trustworthiness considerations.4

_____

to that upon which other hearsay exceptions are based . . . is that public
records or reports, by virtue of their being based on legal duty and
authority, contain sufficient circumstantial guarantees of
trustworthiness to justify their use at trial.").

4. In Zenith Radio Corp., for example, the court developed an additional seven factors addressing the adequacy of the investigative/evaluative process of agency determinations:

> (1) The finality of the agency findings, i.e. , the state of the proceedings at which the findings were made (whether they are subject to subsequent proceedings or de novo review), and the likelihood of modification or reversal of the findings.

> (2) The extent to which the agency findings are based upon or are the product of proceedings pervaded by receipts of substantial amounts of material which would not be admissible in evidence

14

Most notably, a report may be untrustworthy "if the report appears to have been made subject to a suspect motivation. For example, if the public official or body who prepared the report has an institutional or political bias, and the final report is consistent with that bias." Federal Rules of Evidence Manual 1688-89 (Stephen A. Saltzburg et al. eds., 7th ed. 1998); see also Pearce v. E.F. Hutton Group, Inc., 653 F.Supp. 810, 814 (D.D.C. 1987) (excluding findings made in a congressional report because,"[g]iven the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a private party. There would appear to be too great a danger that political considerations might affect the findings of such a report"). An EEOC report might also be untrustworthy where it is made in contemplation of litigation. See Harris v. Birmingham Bd. of Educ., 537 F. Supp. 716, 721-22 (N.D. Ala. 1982), aff 'd in part & rev'd in part, 712 F.2d 1377 (11th Cir. 1983) (finding that an EEOC determination was not trustworthy where it was made six

_____

> (e.g., hearsay, confidential communications, ex parte evidence), and the extent to which such material is supplied by persons with an interest in the outcome of the proceeding.

> (3) If the findings are products of hearings, the extent to which appropriate safeguards were used (Administrative Procedure Act, Due Process), and the extent to which the investigation complied with all applicable agency regulations and procedures.

> (4) The extent to which there is an ascertainable record on which the findings are based.

> (5) The extent to which the findings are a function of an executive, administrative, or legislative policy judgment (as opposed to a factual adjudication) or represent an implementation of policy.

> (6) The extent to which the findings are based upon findings of another investigative body or tribunal which is itself vulnerable as a result of trustworthiness evaluation.

> (7) Where the public report purports to offer expert opinion, the

extent to which the facts or data upon which the opinion is based are of a type reasonably relied upon by experts in a particular field.

Zenith Radio Corp., 505 F. Supp. at 1147.

months after litigation had been filed and that "[t]he trustworthiness of the determination is further eroded by the obvious disregard of the affidavits submitted by the defendant to the EEOC. The court is appalled by the numerous erroneous and obviously slanted statements contained in the determination, the list of which is too lengthy to set out").

While the District Court was skeptical about whether the EEOC had the proper factual basis to come to the conclusions that it did in the EEOC Letter of Determination, none of the aforementioned trustworthiness considerations have been invoked in this case, either here or in the District Court. We assume therefore that the EEOC determinations were trustworthy and review the District Court's decision to exclude the EEOC Letter of Determination only under Rule 403.

B. Rule 403

Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Rule 403 is an "umbrella rule" spanning the whole of the Federal Rules of Evidence. See Federal Rules of Evidence Manual 251 (Stephen A. Saltzburg et al. eds., 7th ed. 1998) ("[T]he Trial Judge must apply [Rule 403] in tandem with other Federal Rules under which evidence would be admissible."). Accordingly, it is generally applied to evidence otherwise admissible under Rule 803(8)(C).5 See, e.g., Zenith Radio Corp., 505 F. Supp. at

---

5. The Fifth Circuit has noted that it is possible to confuse "the test for admissibility under Rule 803(8)(C) with that for excluding otherwise admissible evidence under Rule 403." Cortes v. Maxus Exploration Co., 977 F.2d 195, 201 (5th Cir. 1992). As that Court has explained:

> Under Rule 803(8)(C), investigative reports made by government agencies are removed from the rule against hearsay unless

1146 ("[W]here the probative value of [evidence admissible pursuant to Rule 803(8)(C)] is outweighed by the danger of

unfair prejudice . . . or needless presentation of cumulative evidence attendant upon the opponents' efforts to establish untrustworthiness of the report, the court may exclude the report under F.R.E. 403.").

Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility. That is, evidence may be excluded if its probative value is not worth the problems that its admission may cause, e.g. unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.6 However, there is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be "substantially outweighed" by the problems in admitting it. As a result, evidence that is highly probative is exceptionally difficult to

_____

circumstances indicate untrustworthiness. Because of this presumption that agency reports are not to be excluded under the hearsay rule, this court has held that the party opposing the admission of the report under Rule 803(8)(C) must prove the report's untrustworthiness. . . . Rule 403 gives trial courts the discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . ." This court, on several occasions, has found investigative reports and files of the EEOC to be highly probative. We also warned . . . that Rule 403 should not be misused in such a way that "would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C)." None of these decisions should be read as leaving district courts without discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule.

Id. (internal citations omitted).

6. It is worth stressing that the term "unfair prejudice" as a factor against which the probative value of evidence is weighed under Rule 403 is often misstated as mere prejudice. Indeed, any evidence that tends to harm a party's case could be said to be prejudicial. Thus, the prejudicial effect of admitting the evidence must rise to the level of creating an unfair advantage for one of the parties for the evidence to be excluded under Rule 403.

17

exclude. See, e.g., United States v. Krenzelok, 874 F.2d 480, 482 (7th Cir. 1989) ("Its probative value was . .. great. Its prejudicial effect may well have been great too. But when the trial judge is in doubt, Rule 403 requires admission (this is the force of "substantially outweighed") . . . .).7

Rule 403 necessarily requires that the District Court engage in balancing to determine whether the probative value of the evidence is "substantially outweighed" by the negative factors listed in Rule 403. See United States v. Long, 574 F.2d 761, 766 (3d Cir. 1978) (noting that even if

the District Court does not invoke Rule 403, "the trial judge's balancing will be subsumed in his ruling"). In balancing, "the proper equation places on one side the maximum reasonable probative force for the offered evidence," while "the other side of the equation should include the likely prejudicial impact of the evidence." Federal Rules of Evidence Manual 242 (Stephen A. Saltzburg et al. eds., 7th ed. 1998). The balancing test in Rule 403 ensures that juries are not presented with evidence that is far less probative than it is prejudicial.

Coleman submits that EEOC reports are necessarily of high probative value, especially given the expertise and long experience of the Agency in employment discrimination matters. She finds support for this view in federal appellate case law. Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir. 1972); Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 (9th Cir. 1981). The Smith Court intimated that the probative value of EEOC determinations almost always outweighs any prejudicial impact:

> [T]o ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary.

---

7. An interesting hypothetical question as to the meaning of Rule 403 is posed by positing a report or other evidence whose probative value on the scale of values was 100%. It would appear that, as such, it could not properly be excluded under Rule 403 because it could not be "substantially outweighed" by the countervailing factors.

18

> The fact that an investigator, trained and experienced in the area of discriminatory practices and various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases. Its probative value, we believe, at least outweighs any possible prejudice to defendant. "Prejudicial" cannot be equated with "harmful" in all cases; rather it connotes "harmful," plus "non-probative."

454 F.2d at 157.8

Although we decline to hold that EEOC reports are per se admissible as more probative than prejudicial, the argument that EEOC reports that are not challenged as untrustworthy are presumptively probative is not without force. But the other Rule 403 factors -- especially considerations of undue delay, waste of time, or needless presentation of cumulative evidence, which are often necessary to counter an EEOC report -- could "kick-in" and control, especially where the report could be shown to be of low probative value. The weight of the case law holds that

Rule 403 may operate on an EEOC report, and that the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis. Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302 (11th Cir. 1989); United States v. MacDonald , 688 F.2d 224, 229-30 (4th Cir. 1982); Johnson, 734 F.2d at 1309; Cortes, 977 F.2d at 201-02.

_____

8. We note that the Fifth and Ninth Circuits take the minority view that agency reports are per se admissible as the probative value necessarily outweighs the negative factors in Rule 403. The majority view, on the other hand, gives less deference to the probative value of agency reports, refusing to categorically require admission of agency findings. See e.g., Paolitto v. Crawford, 151 F.3d 60, 65 (2nd Cir. 1998) (adopting the majority position that leaves "the question of whether to admit EEOC . . . findings to the sound discretion of the district court"); Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1309 (8th Cir. 1984) ("While EEOC reports may contain information that would be useful to the jury, their probative value may be outweighed by problems that would result from their admission.").

This view is apparently the law of this Circuit, based upon a terse discussion in Walton. 563 F.2d at 75. At all events, we think that Walton reflects the better view, and we take this opportunity to endorse the majority position in Walton and to clarify that a District Court has the discretion to exclude probative EEOC Letters of Determination where the negative factors listed in Rule 403 substantially outweigh the probative value of the EEOC determinations. In other words, we decline Coleman's invitation to conclude that, based on the presumption of admissibility under Rule 803(8)(C), EEOC Letters of Determination are per se more probative than prejudicial under Rule 403, and will review the District Court's exclusion of the EEOC letter based on the principles discussed supra.

We note in this regard that the assessment of probative value under Rule 403 should take into consideration the proof value of the particular report as and when offered at trial. Here that proof value could be said to be low, given the fact that it would have been introduced to the jury after all the evidence had been offered (which evidence was at odds with the EEOC report), and was more conclusory than factual in nature. See, e.g., Paolitto , 151 F.3d at 65; see also Johnson, 734 F.2d at 1309. Further its value is not increased based on the agency's expertise, as the District Court seemed to think, because it is not an "expert report." Evaluative public records and reports, admissible under Article VIII of the Federal Rules of Evidence, are distinct from expert opinion evidence, identified in Article VII. They are subject to entirely different standards of admissibility, et alia.

C. Application to This Case

As we have explained, the District Court delayed ruling on the motion to exclude the Letter of Determination at the in limine hearing. Rather, the Court allowed Coleman to present her case-in-chief at trial before making a decision. Referencing Walton, the District Court concluded that the risk of unfair prejudice and confusion substantially outweighed the probative value of the EEOC Letter of Determination. The District Court found that the probative

value of the document was particularly low since the evidence presented at trial differed from the findings of the EEOC in a critical respect -- the EEOC's finding that Coleman was "highly experienced" in sales was clearly undermined by the testimony presented at trial, even by Coleman herself.

We disagree with the District Court's general approach to the Rule 403 calculus. The District Court in effect charged the plaintiff with replicating the record before the EEOC and then evaluated the record produced by plaintiff to see if it justified the report. But neither the plaintiff nor the District Court had access to the whole EEOC record. 9 What the District Court had was: (1) A letter from Home Depot to the EEOC about a consent decree entered in a class action case against Home Depot; (2) A response from Home Depot to the EEOC; (3) Coleman's EEOC charge questionnaire, filled out by Coleman herself. It does not appear, however, that the District Court knew how the EEOC came to its determination or that it had access to all the information upon which the EEOC relied. In particular we do not know if the EEOC had any evidence upon which to base its conclusion that a white employee with evaluations as poor as Coleman's was allowed to transfer to another department or that women were systematically hired as cashiers irrespective of their experience and never transferred to sales positions, unlike the male cashiers. See supra.

On the other hand, the District Court was clearly correct about the low probative value of the most critical facet of the EEOC report: that Coleman was not hired as a sales associate despite being a "highly experienced" candidate. Coleman's experience in hardware sales, so central to the Home Depot modus operandi, was exposed by her own testimony to be gossamer.10 That is a matter within her own

---

9. The EEOC does not appear to have clear standards for how it gathers information. The Federal Laws Prohibiting Job Discrimination: Questions and Answers, available at http://www.eeoc.gov/task/pch-lit.html, states that "[i]n investigating a charge, EEOC may make written requests for information, interview people, review documents, and, as needed, visit the facility where the alleged discrimination occurred."

10. Kobera, the Store Manager at the Home Depot where Coleman worked, testified that Home Depot attempts to place employees in sales

ken. Yet had the EEOC report been admitted, a great deal of time would have had to have been consumed to counter the report's conclusion about the fate of other employees, male and female. Because the EEOC Letter of Determination concluded that Home Depot had systematically discriminated against female and minority employees, in order to rebut these expansive allegations, Home Depot would have had to present evidence showing that it did not discriminate when it placed former employees in cashier positions or fired them. This would certainly have involved a great deal of testimony-- a trial within a trial in fact -- about the employment histories of a large number of former employees.11

The District Court opined that the EEOC Letter of Determination would be unfairly prejudicial or confusing, but we find the argument that the evidence would have

---

positions who have a "working knowledge or some point of reference" in the particular area so that they can best assist customers. For example, Home Depot wanted employees in the hardware department to be able to recommend a versatile power tool to customers. See discussion supra.

11. A number of cases have considered the amount of time that it would take to counter a trustworthiness challenge as a consumption of time factor cognizable under Rule 403. See McShain v. Cessna Aircraft Co., 563 F.2d 632, 636 (3d Cir. 1977) (holding that the District Court did not abuse its discretion by excluding an NTSB report because the "reception of such reports into evidence would have involved a lengthy . . . inquiry into the 'circumstances bearing on the trustworthiness' of the investigators' conclusions. Thus, it may well have been that, in the course of the eighteen-day trial, the additional probative value of the excluded reports was substantially outweighed by the opportunity to avoid undue delay of waste of time"); see also Zenith Radio Corp., 505 F. Supp. at 1146 ("[W]here the probative value of [evidence admissible pursuant to 803(8)(C)] is outweighed by . . . needless presentation of cumulative evidence attendant upon the opponents' efforts to establish untrustworthiness of the report, the court may exclude the report under F.R.E. 403."). The trustworthiness challenge will generally be disposed of at the in limine hearing stage, but not always. Moreover, a finding of trustworthiness by the judge does not preclude a trustworthiness challenge by the objecting party at trial. Therefore since trustworthiness can also become an issue at trial itself, it can bear upon the time-related factors in Rule 403.

created the potential risk of undue delay and waste of time to be stronger. Weighing undue delay and waste of time against the low probative value of the EEOC determination, it appears that the District Court acted properly. We are satisfied that the EEOC Letter of Determination wrongly classified Coleman as "highly experienced"-- the evidence demonstrated that Coleman knew little about hand and

power tools and had only worked in a "mom and pop" hardware stare, see discussion supra-- and that it was of such low probative value that the Court could have found that it was "substantially outweighed" by the fact that Home Depot would have had to rebut the EEOC's finding that the company engaged in a pattern of race and gender discrimination by presenting information about numerous former Home Depot employees.

In sum, we conclude that the District Court did not abuse its discretion in deciding that the probative value of the EEOC Letter of Determination was "substantially outweighed" by the problems created by its introduction. Although the District Court did not know the full extent of the evidence relied upon by the EEOC to conclude that Home Depot had wrongly: (1) hired Coleman as a cashier; (2) refused to transfer her to a sales position; and (3) terminated her, considering that the EEOC clearly was mistaken in the critical conclusion that Coleman was a "highly experienced" employee, the District Court did not abuse its discretion in finding that the EEOC Letter of Determination had such a low probative value that the undue delay that would have been involved in the rebuttal of the allegations of systematic discrimination contained in the EEOC determination "substantially outweighed" that low probative value. The judgment of the District Court will therefore be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

23