

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2006

# Johnson v. SEPTA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2402

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Johnson v. SEPTA" (2006). *2006 Decisions.* Paper 574.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/574

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2402

STEVEN JOHNSON,
                                        Appellant

v.

SEPTA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-0297
(Honorable J. Curtis Joyner)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*

(Filed: August 17, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Stephen Johnson, alleging various claims of race discrimination against SEPTA,

appeals the grants of SEPTA's motions in limine, certain evidentiary findings at trial, and

certain jury instructions.  We will affirm.

I.

SEPTA hired Stephen Johnson, an African American, as a patrol officer for the SEPTA Transit Police Department in 1986. He was promoted to Sergeant in 1990 and to Lieutenant in 1995. As Lieutenant, Johnson was commanding officer of a SEPTA zone, requiring him to assume ultimate responsibility to deal with crime, paperwork, and assignments within the zone.

In April 2001, Johnson began conducting surveillance of SEPTA's Carpenter Lane station to catch the person cutting a fence separating train tracks. Supposedly as part of the investigation, Johnson took a SEPTA Transit Police Department marked patrol vehicle home on several occasions, without informing his supervisor. On at least one occasion, he used the vehicle to drive his daughter to a day-care service. On another occasion, Johnson made a traffic stop of another vehicle while a civilian was riding as a passenger in the SEPTA vehicle.

Both SEPTA's Inspector General's Office and Transit Police Department investigated Johnson's use of the patrol vehicle. After a pre-disciplinary hearing, Johnson's superior, Captain Vandyke Rowell—an African American—suspended Johnson for thirty days and issued him a final warning for his misuse of the vehicle. Johnson appealed Rowell's decision to Deputy Chief David Scott—also an African American—who reduced Johnson's suspension to ten days and removed the final warning. Johnson appealed Scott's decision to Russell Figueita—a Caucasian—of SEPTA's Strategic Business Development Division, who affirmed Scott's decision.

In September and October 2001, in response to the discipline he received, Johnson filed two race-discrimination charges against SEPTA, each with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. The PHRC found probable cause to credit Johnson's complaint, and ordered SEPTA to refrain from any further discrimination, to reduce Johnson's suspension from ten days to five, to issue back pay, and to reimburse Johnson for complaint-related expenses. Johnson claims SEPTA subsequently retaliated against him for filing both charges.

The first alleged retaliation involves discipline for unauthorized use of a SEPTA-issued cellular telephone. Between March 3, 2002, and June 2, 2002, Johnson made or received 2,844 calls on the SEPTA telephone, totaling over $1,800 and 7,140 minutes. 1,230 of those calls were not related to SEPTA, the city of Philadelphia, or directory assistance, contrary to SEPTA policy. After a predisciplinary hearing, Rowell suspended Johnson for ten days and issued a final warning for misuse of the cellular phone. Scott affirmed the suspension, but removed the final warning. After Johnson appealed Scott's decision, SEPTA Assistant General Manager James B. Jordan, a Caucasian, affirmed Scott's decision.

The second alleged retaliation concerns Johnson's job-performance reviews. In October 2002, Rowell gave Johnson a "below expectations" overall rating for fiscal year 2003 (November 2001 to October 2002). Johnson took sick or stress leave starting October 2002 and lasting for ten months. He was given another "below expectations" overall rating for fiscal year 2004 (November 2002 to October 2003). The rating

3

prevented Johnson from receiving a 3% increase in pay. Captain Steven Harold, a Caucasian, placed Johnson on a performance improvement plan and gave him a month-to-month evaluation after the fiscal year 2004 evaluation. Johnson challenged his employee evaluations for fiscal years 2003 and 2004 and claimed his denial of pay increase was retaliation for his race discrimination complaints.

On January 22, 2004, Johnson filed this lawsuit against SEPTA, asserting six separate claims: (1) Race discrimination under 42 U.S.C. § 2000e (Title VII), (2) Race discrimination under 42 U.S.C. § 1981, (3) Race discrimination under Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.* (PHRA), (4) Retaliation under Title VII, (5) Retaliation under § 1981, and (6) Retaliation under the PHRA. SEPTA filed an Omnibus Motion in Limine to preclude the introduction of certain evidence at trial, and then filed a Supplemental Motion in Limine. The District Court granted in part the Omnibus Motion in Limine, and granted the Supplemental Motion.

The jury returned a verdict in favor of SEPTA on all counts. Johnson appeals, challenging the partial grant of the Omnibus Motion in Limine, the grant of the Supplemental Motion in Limine, the District Court's evidentiary findings at trial, and the District Court's jury instructions.

## II.

### A.

Johnson challenges the District Court's decision not to admit four different sets of documents, testimony, and evidence: (1) Documents and testimony relating to Deputy

4

Chief Scott's 1999 complaint of disparate impact and retaliation (as both direct and impeachment evidence), (2) evidence related to the PHRC's investigation of Johnson's complaint and its finding of probable cause, (3) comparator evidence regarding a Caucasian SEPTA officer who was not disciplined, and (4) evidence stemming from interviews of SEPTA police officers.

We review the admissibility of evidence for abuse of discretion. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1341 (3d Cir. 2002). "An abuse of discretion is a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *SEC v. Infinity Group*, 212 F.3d 180, 195 (3d Cir. 2000) (internal citations omitted).

The District Court did not abuse its discretion in any of its evidentiary determinations. The documents and testimony relating to Scott's complaint of disparate impact and retaliation involve his objections to SEPTA's entry-level testing, requiring a 1.5 mile run, which he claims inhibit minority and female recruitment. Attempting to prove that SEPTA engaged in a pattern of race discrimination, Johnson claims the court should have allowed testimony that Cecil Bond, an African American and the Assistant General Manager of Safety and Security for SEPTA, harassed or retaliated against Scott for filing his complaint. But the probative value of such evidence is not apparent. There is no evidence to suggest any actions Bond took against Scott were racially motivated. Nor has Johnson pointed to any facts or cases that call into question the District Court's discretion in this case in admitting evidence that was either irrelevant under Federal Rule

5

of Evidence 401, or prejudicial under Rule 403. We see no basis for holding the District Court abused its discretion when it declined to admit this evidence.[1]

For the same reason, the District Court did not abuse its discretion in ruling inadmissible both testimony from Cecilia Keller of the PHRC and the PHRC's Finding of Probable Cause from Johnson's October 2001 complaint—in which the PHRC found probable cause based on evidence that three Caucasian SEPTA officers received lighter suspensions than Johnson for similar policy infractions. *See, e.g.*, *Walton v. Eaton Corp.*, 563 F.2d 66, 74–75 (3d Cir. 1977) (holding the district court did not abuse its discretion when it declined to admit the EEOC's findings of facts and determination of the merits of the appellant's claims). Moreover, the jury had already heard the evidence referenced in the PHRC's findings. Accordingly, we see no error.

Nor did the District Court err when it declined to allow evidence concerning allegations against Officer Jason Osner, a Caucasian SEPTA officer who was not disciplined despite his unauthorized use of a rental vehicle he obtained with a SEPTA

---

[1] Johnson also claims the District Court erred in not allowing evidence of Scott's complaint and alleged retaliation as impeachment evidence during trial. Despite this claim (and SEPTA's argument that the District Court did not err in excluding this evidence during trial), there is no evidence in the record that the District Court ever disallowed any attempt during trial to introduce this evidence. At trial, Johnson's counsel asked Scott a series of questions about the testimony he gave concerning his discrimination complaint. SEPTA's counsel objected out of concern that Johnson's counsel would introduce the precluded evidence, but the District Court overruled SEPTA's objection because the questions were narrowly framed and Johnson's counsel did not intend to present the precluded evidence, except as impeachment evidence if Scott were to have lied on the stand. (App. 334–357, 366.) There is no indication in the record that Johnson attempted to introduce the otherwise precluded evidence.

account.  The District Court found that Osner was a not a proper comparator.  As SEPTA's counsel noted at trial, Osner's misuse of the vehicle was different from Johnson's.  Osner did not make arrests with civilians in the vehicle, nor did he use his vehicle to run errands with family members.  There were enough material differences between the allegations facing Osner and those facing Johnson that we cannot say the District Court erred.

The District Court did not abuse its discretion in disallowing evidence related to a series of interviews, conducted by McKay Jones, of various SEPTA police officers (in response to Chief Evans' desire to improve collaboration within the police department).  The reports stemming from the Jones interview were not relevant to Johnson's claims.  Although Johnson argues the report provides evidence of pervasive race discrimination at SEPTA, this is not apparent from the report.

## B.

Johnson claims the District Court committed legal error in its jury charge by stating that, in order to establish Johnson's retaliation claim, the jury had to find both that SEPTA retaliated against Johnson "because of a protected constitutional right," and that Johnson had "demonstrate[d] that the defendant knew of the retaliation and knew of the Plaintiff's constitutional activities."  (App. 696.)  We exercise plenary review to

determine whether the District Court's jury instructions stated the proper legal standard.[2]

*United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006).

"When we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation." *United States v. Khorozian*, 333 F.3d 498, 508 (3d Cir. 1995). Viewed as a whole, we see no error in the District Court's instructions. The District Court correctly identified the elements of the claims at issue. Prior to charging the jury with the language Johnson objected to, the District Court instructed that

> To prevail on a retaliation claim under these statutes, the plaintiff must show all of the following: One, the plaintiff engaged in protected activity; two, the plaintiff was subjected to an adverse employment action at the time, or after, the protected conduct took place. And, third, the defendant took an adverse employment action against the plaintiff because of plaintiff's protected conduct, protected activity.
> An employee engages in protected activity when he opposes what he believes to be an unlawful employment practice, and files a charge of discrimination or participates in the charge brought by another.

App. 692–93.

---

[2] SEPTA claims Johnson is objecting not to the legal standard, but to the District Court's particular wording in its jury charge, and thus our review should be for abuse of discretion. "Generally, we review the district court's refusal to give certain jury instructions under an abuse of discretion standard although where . . . the question is whether the jury instructions stated the proper legal standard, our review is plenary." *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995). Here, Johnson objects that the jury instructions misstate the proper legal standard. Johnson does not claim that the District Court should have given a set of instructions the wording of which he would have preferred. Accordingly, our review is plenary.

The District Court instructed the jury that, if Johnson claimed SEPTA retaliated against him for constitutional activities (such as, for example, engaging in protected speech), then he would have a separate standard of proof to meet. Although the instruction concerning constitutional rights might have been unnecessary—the District Court had already instructed the jury with regard to "protected activities"—they were not a misstatement of the law, and were unlikely to confuse the jury. We see no error.

## III.

We will affirm the judgment of the District Court.