NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 19-2415, 19-3523

———————

BETH SCHIRNHOFER,
Appellant in No. 19-2415

v.

PREMIER COMP SOLUTIONS, LLC,
Appellant in No. 19-3523

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-00462)
District Judge: Billy Roy Wilson

———————

Argued June 16, 2020

Before: JORDAN, MATEY, and ROTH, *Circuit Judges*.

(Opinion filed: October 20, 2020)

Jonathan K. Cohn
Maureen Davidson-Welling [ARGUED]
Stember Cohn & Davidson-Welling
425 First Avenue, 7th Floor
The Hartley Rose Building
Pittsburgh, PA 15219
        *Counsel for Beth Schirnhofer*

Stanley M. Stein [ARGUED]
George C. Thompson
445 Fort Pitt Boulevard
Suite 150
Pittsburgh, PA 15219
    *Counsel for Premier Comp Solutions, LLC*

---

OPINION[*]

---

MATEY, *Circuit Judge.*

Premier Comp Solutions, LLC ("Premier") fired Beth Schirnhofer. A jury concluded that act was discriminatory, but also found that Premier would have made the same decision regardless of the illegal motive. As a result, the District Court awarded Schirnhofer no damages, but required Premier to pay some of Schirnhofer's attorneys' fees and costs. Schirnhofer appeals the decision to withhold damages and several evidentiary rulings; Premier challenges the award of fees and costs. Finding no error, we will affirm.

## I. BACKGROUND

Schirnhofer worked at Premier until February 2014. After Premier terminated her employment, she sued, alleging discrimination and retaliation. Schirnhofer claimed that Premier ended her employment because she suffered from post-traumatic stress disorder ("PTSD") and requested an accommodation for that disability.[1] At trial, Premier defended Schirnhofer's firing by arguing that her social-media posts violated company policy.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
[1] Schirnhofer brought these claims simultaneously under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Allegheny County Antidiscrimination Ordinance ("ACAO"). The parties do not suggest

2

The jury rejected Schirnhofer's retaliation claim, but found in her favor on the discrimination claim, calculating her damages at $285,000. But the jury also found that Premier would have terminated Schirnhofer "regardless of her alleged disability." (App. at 508.) So the District Court awarded Schirnhofer no damages, though it ruled that Premier needed to pay some of Schirnhofer's attorneys' fees and costs. Both parties cross-appealed, and we will now affirm.[2]

## II. DISCUSSION

### A. Schirnhofer's Challenges

#### 1. The Jury's Verdict

A plaintiff can prove illegal discrimination by showing that her protected characteristic "was *a* motivating factor for any employment practice, even though other factors *also* motivated the practice." 42 U.S.C. § 2000e-2(m) (emphasis added). But a plaintiff may not recover monetary damages for that violation if the defendant shows that it "would have taken the same action in the absence of the impermissible motivating

---

that the choice of law affects our analysis. *Cf. Taylor Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

Schirnhofer also brought claims under the Family and Medical Leave Act ("FMLA"), and failure-to-accommodate claims under the ADA, the PHRA, and the ACAO. After Premier moved for summary judgment, Schirnhofer abandoned her FMLA claims, and she abandoned her failure-to-accommodate claims before trial. Schirnhofer does not raise these claims on appeal.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

factor." *Id.* § 2000e-5(g)(2)(B). For that reason, the District Court held that the jury's same-decision finding superseded its damages finding.[3]

Schirnhofer argues that the jury's verdict can be interpreted in a manner that permits her to recover the damages found by the jury.[4] She reasons that the jury's finding that Premier would have terminated her "regardless of her alleged disability" can be read to reject her claim only as much as it alleged discrimination on the basis of an *actual* disability, and not as far as it alleged discrimination on the basis of a *perceived* disability. But the District Court properly instructed the jury that "the ADA's definition of 'disability' includes not only those persons who actually have a disability, but all those who are 'regarded as' having a disability." (App. at 1875.) *See* 42 U.S.C. § 12102(1). And we presume the jury followed these instructions. *See Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019).

Schirnhofer also argues that the jury might have interpreted the same-decision question as applying only to her retaliation claims. But we cannot ignore the clear language of the verdict form, which asked whether Premier would have made the same decision "regardless of [Schirnhofer's] alleged disability"—not regardless of her request for a reasonable accommodation.

For those reasons, we will affirm the District Court's decision on damages.

---

[3] Though 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B) appear within Title VII of the Civil Rights Act of 1964, neither party challenges their applicability to Schirnhofer's ADA claim. *See* 42 U.S.C. § 12117.

[4] We exercise plenary review over the District Court's interpretation of the jury's verdict. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 764 (3d Cir. 1990).

2.   The District Court's Evidentiary Rulings

In the alternative, Schirnhofer asserts that the District Court made several erroneous evidentiary rulings, requiring a new trial.[5] We disagree.

i.   *HR Representative Testimony*

At trial, defense counsel asked Jennifer Snyder, a member of Premier's human resources team, whether she "considered [Schirnhofer's] termination to be a good termination; that is, a valid termination," and whether she "considered [Schirnhofer's social-media] posts to be threatening." (App. at 1431.) Snyder responded affirmatively to both inquiries. Schirnhofer argues that this testimony was irrelevant, since Snyder was not involved in the decision to terminate and learned of the social-media posts only after Schirnhofer's termination. But the cases Schirnhofer cites involve testimony speculating about *the decisionmaker*'s motivations; in contrast, Snyder discussed *her own* beliefs. And evidence showing that Schirnhofer's social-media posts *were* threatening, in violation of Premier's policy, is relevant to whether those posts were a reason for her termination.

ii.   *Advice-of-Counsel Testimony*

Linda Schmac, Premier's president, testified that she consulted with counsel about Schirnhofer's request to accommodate her claimed disability. Premier pointed to this testimony when arguing that Schirnhofer's termination was not retaliatory. Schirnhofer

---

[5] We review a District Court's evidentiary rulings for abuse of discretion. *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). Nonconstitutional evidentiary errors are harmless—and thus do not require retrial—"if it is highly probable that the error[s] did not affect the outcome of the case." *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir. 1989).

argues this testimony was irrelevant, since Schmac was not seeking advice about the termination. But the evidence could show that Schmac was receptive to Schirnhofer's request, and thus less likely to retaliate against Schirnhofer as a result of it. *Cf. Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (noting that retaliation claims may be proven by evidence of an employer's "antagonism"). Or the advice—that no accommodation was necessary—could show that Schmac "resented . . . Schirnhofer for having caused her to spend time and money on" the request (App. at 1390), making retaliation more likely. *Cf. Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3d Cir. 2003) ("[The evidence] could reasonably be viewed as proof that [the employer] no longer wanted to be bothered with persistent requests for 'baseless' accommodations, . . . especially [since the employer] had conferred with its attorneys and concluded that [the employee] was not 'disabled.'").

Schirnhofer also argues that Schmac withheld crucial facts from her attorney. True, advice-of-counsel defenses are "available only to those who [provide to their attorney a] full and honest disclosure of the material facts surrounding a possible course of action." *United States v. Traitz*, 871 F.2d 368, 382 (3d Cir. 1989). But the adequacy-of-disclosure question is one for the jury. *See United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019). And Schirnhofer was free to, and did, present evidence and argument on this point at trial.

### iii. Social-Media Testimony

Schirnhofer testified that she could not recall whether she personally created the offending social-media posts. In response, Schmac testified that, in her experience, the

location of the material on Schirnhofer's social-media page meant that Schirnhofer had recently posted it herself. Schirnhofer now argues that this was impermissible expert testimony. But even if it were, its admission was harmless, since Schirnhofer's trial theory was that the posts were non-threatening and unrelated to work, not that she didn't create them, or did so long ago. *Cf. Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329–30 (3d Cir. 2002) (erroneous admission of expert testimony harmless where proponent "did not rely heavily on that testimony").

### iv. Coworker Testimony

Finally, Premier presented the videotaped deposition testimony of Ann Veglia Eisler, one of Schirnhofer's coworkers, in which Veglia Eisler explained how Premier responded to her own requests for medical leave. Schirnhofer argues this testimony was irrelevant and unduly prejudicial. But "evidence regarding an employer's treatment of other members of a protected class is especially relevant to the issue of the employer's discriminatory intent." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 523 (3d Cir. 2003). And even if Veglia Eisler's testimony was emotional, we are not persuaded that it afforded Premier some unfair advantage with the jury or was otherwise so problematic as to substantially outweigh its probative value. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343–44 & n.6 (3d Cir. 2002).

In all, we see no reversible error in the evidentiary issues raised by Schirnhofer and will therefore affirm the District Court's decisions.

**B.      Premier's Challenge to Attorneys' Fees and Costs**

After trial, Schirnhofer petitioned for an award of attorneys' fees and costs. In "[c]onsider[ation of] the [District] Court's decision not to enter the jury's award of damages," she sought only two-thirds of her documented expenses. (Supp. App. at 44.) The District Court eliminated fees and costs attributable to a certain deposition, reduced the figures by another 40% given Schirnhofer's "limited victory," and awarded her $177,187.08 in attorneys' fees and $13,259.50 in costs. (App. at 50.)

Premier points to the lack of a damages award to argue that Schirnhofer deserved no recovery. But Premier concedes that the District Court could consider "the significance of the legal issue on which [Schirnhofer] prevailed" and "the public purpose served by the litigation" when ruling on her petition. (Response Br. at 18.) And the District Court did just that, noting that the jury's verdict rejected Premier's argument "that . . . PTSD was not a recognized disability under the ADA." (App. at 50–51.) This reasoning was not an abuse of discretion,[6] so we will affirm.[7]

---

[6] We review an award of attorneys' fees and costs for abuse of discretion. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

[7] Schirnhofer sought fees under 42 U.S.C. § 2000e-5(g)(2)(B), which allows plaintiffs to recover "attorney's fees and costs *demonstrated to be directly attributable only to the pursuit of a [mixed-motive] claim." (emphasis added). Premier argues that the District Court ignored the italicized language—and thus applied the wrong legal standard—when ruling on Schirnhofer's fee petition. But with one exception (which the District Court sustained), Premier failed to identify any specific fees that were not "directly attributable only to the pursuit of" Schirnhofer's discrimination claim below. So it has waived the right to attack the District Court's fee award on a line-by-line basis here. *See Robinson*, 920 F.3d at 187–89.

### III. CONCLUSION

For those reasons, we will affirm the District Court's interpretation of the verdict, its evidentiary rulings, and its award of attorneys' fees and costs.