

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2005

# Coast Auto Grp Ltd v. VW Credit Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1418

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Coast Auto Grp Ltd v. VW Credit Inc" (2005). *2005 Decisions.* Paper 1555.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1555

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-1418

————

COAST AUTOMOTIVE GROUP, LTD.,
DELAWARE CORPORATION
d/b/a TSE MOTOR CARS;

ASPEN KNOLLS AUTOMOTIVE GROUP, LLC,

(Intervenor in D.C.)

v.

VW CREDIT, INC., A CORPORATION;
VOLKSWAGEN OF AMERICA, A CORPORATION;
AUDI OF AMERICA, A CORPORATION;
MARGE YOST; MICHAEL RUECKERT; STEPHEN JOHNSON

Coast Automotive Group, Ltd.,

Appellant

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 97-cv-02601)
District Judge: Hon. Garrett E. Brown

————

Submitted Under Third Circuit LAR 34.1(a)
on March 22, 2004

Before: Roth, Ambro, and Chertoff, <u>Circuit Judges</u>.

OPINION OF THE COURT

ROTH, Circuit Judge.

This case concerns a jury verdict in favor of Volkswagen of America and Audi of America (VOA/AOA) on two claims brought by VOA/AOA's franchisee, Coast Automotive Group, Ltd. Coast alleged that VOA/AOA's failure to make a fair and equitable allocation of motor vehicles to Coast after Coast lost its line of credit and went into bankruptcy violated both the New Jersey Franchise Practices Act (NJFPA), N.J. Stat. Ann. § 56:10-7(e), and the Automobile Dealers' Day in Court Act (Dealers' Act), 15 U.S.C. § 1221 et seq. Although the jury decided that VOA/AOA violated § 56:10-7(e) of the NJFPA by failing to make a fair and equitable allocation, it also found that VOA/AOA was not liable because Coast failed to substantially comply with the franchise agreement. As for the Dealers' Act claim, the jury found that VOA/AOA's conduct was not an attempt to coerce or intimidate Coast into giving up or selling its franchise. The main issues we face on this appeal are whether the jury instruction and related verdict sheet question addressing § 56:10-9 as a complete defense to liability under the NJFPA wERE an accurate statement of the law, and whether the jury verdict on VOA/AOA's

2

defense to the NJFPA claim and the verdict on the Dealers' Act claim were against the weight of the evidence.

## I. FACTUAL AND PROCEDURAL HISTORY

Coast was an authorized retailer of Volkswagen and Audi vehicles that owned new vehicle dealerships in Toms River, New Jersey. Beginning in 1991, Volkswagen Credit, Inc. (VCI), a subsidiary of VOA/AOA, provided Coast with floor plan financing so that Coast could purchase vehicles for its inventory. In December 1995, VCI called Coast into default under the provisions of their agreements and, soon thereafter, filed a state court action in the Law Division of a New Jersey Superior Court seeking repayment of the debt, VW Credit, Inc. v. Coast Automotive Group, Ltd., et al., Docket No. OCN-L-1162-96. On December 15, 1995, Coast filed a Chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey. The bankruptcy action was dismissed on September 18, 1997. Although Coast lost its wholesale line of credit during the pendency of the bankruptcy, it continued to acquire inventory by paying with checks or drafts against its regular checking account or through a series of cash collateral orders that allowed Coast to use the proceeds from the sale of new vehicles to purchase replacement vehicles. Because Coast did not have a wholesale line of credit which would provide for timely replacement of the new vehicle inventory, however, VOA/AOA representatives had to intervene to get new vehicles assigned to Coast, and then arrange for and confirm payment and shipment on each new vehicle. This process both delayed

and reduced the allocation of new vehicles to Coast. Coast also complained that, in order to force the dealership to fold, VOA/AOA was deliberately giving it vehicles that were hard to move such as cars of an undesirable color or cars with stick shifts.

In January 1997, Coast filed a complaint in the Bankruptcy Court against VCI, several VCI employees, and VOA/AOA, essentially alleging that VCI wrongfully called Coast into default. That action was withdrawn from the Bankruptcy Court in May 1997 and transferred to the United States District Court for the District of New Jersey. In April 1998 and October 1999, the District Court granted VCI summary judgment on all counts of Coast's initial sixteen count complaint. Coast appealed.

Meanwhile, Coast amended its complaint adding two claims against VOA/AOA, alleging that VOA/AOA failed to provide sufficient inventory to Coast during the course of Coast's Bankruptcy proceedings in violation of the NJFPA and the Dealers' Act. VOA/AOA amended its Answer in October 1999 to assert a counterclaim under New Jersey law seeking equitable rescission of its franchise agreements with Coast.[1] The District Court held a jury trial in September 2001 on the NJFPA and Dealers' Act claims. The jury returned its verdict in favor of VOA/AOA on both of Coast's statutory causes of action. On October 30, 2002, the District Court entered judgment in VOA/AOA's favor on the NJFPA and Dealers' Act claims. Earlier in 2002, this Court had affirmed in part

---

[1] On October 30, 2002, the District Court rendered a bench opinion on VOA/AOA's counterclaim, finding that although Coast made material misrepresentations in its franchise application, VOA/AOA was not entitled to rescission because it failed to prove damages. Neither party has appealed the District Court's ruling.

and vacated in part the District Court's grant of summary judgment in VCI's favor, remanding the vacated claims against VCI for trial. Judgment became final on January 8, 2003, when the District Court dismissed the remanded claims against VCI as moot after Coast had prevailed in the state court action on identical claims against VCI.

As for the state court action, it had proceeded on a parallel course with the Federal action. In April 1998, Coast impleaded VOA/AOA, alleging the same NJFPA and Dealers' Act claims as those raised in the federal action, along with other statutory and common law claims against VCI. VOA/AOA asserted an identical counterclaim for equitable rescission of its franchise agreements. In July 2002, the state court denied VOA/AOA's summary judgment motion seeking claim and/or issue preclusion as to the NJFPA and Dealers' Act claims and the case proceeded to trial in August 2002.[2] At the conclusion of the presentation of evidence, Coast's NJfPA claims against VOA/AOA were dismissed with prejudice at Coast's request. The jury found in VOA/AOA's favor on the Dealers' Act claim. The state court entered judgment in VOA/AOA's favor on April 7, 2003. Coast's state court appeal is pending.

II. JURISDICTION AND STANDARDS OF REVIEW

---

[2] We find no merit in VOA/AOA's argument that the judgment in the state court action is entitled to *res judicata* effect, precluding further proceedings in this Court. VOA/AOA's motion to preclude the state action on grounds of *res judicata* has already been rebuffed by the New Jersey Superior Court. We agree with Coast that VOA/AOA's appeal in this Court of the first adjudication does not constitute a third forum in which the NJFPA and Dealers' Act claims are being litigated.

5

We have jurisdiction under 28 U.S.C. § 1291.[3] We employ plenary review to determine whether jury instructions misstate a legal standard. <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1202 (3d Cir. 1989). We look at the entire set of instructions to the jury and ascertain if they adequately contain the law applicable to the case and properly apprise the jury of the issues in the case. <u>Douglas v. Owens</u>, 50 F.3d 1226, 1233 (3d Cir. 1995). A jury verdict will not be overturned unless the record is critically deficient of that quantum of evidence from which a jury could have rationally reached its verdict. <u>Swineford v. Snyder County, Pa.</u>, 15 F.3d 1258, 1265 (3d Cir. 1994).

III.  DISCUSSION

A.     The Jury Instruction and Verdict Sheet

Coast's main contention is that it was entitled to a verdict on the NJFPA claim because § 56:10-9 is not a defense to Coast's 1996-1997 allocation claims. It argues that the jury instruction and verdict sheet question completely misstated the law and essentially deprived Coast of its proper NJFPA claim under § 56:10-7(e). According to Coast, the District Court erred in instructing the jury to excuse VOA/AOA from all

---

[3] Shortly before trial in the federal action in 2001, Aspen-Knolls Automotive Group, LLC, the contract purchaser of Coast's franchises, intervened in the federal action, seeking a ruling that any judgment or other relief obtained by VOA/AOA on its equitable rescission counterclaim would not adversely impact Aspen's right to acquire Coast's Volkswagen and Audi franchises. None of the District Court orders expressly disposed of the complaint. Upon review of the parties' responses to our inquiry as to the status of the Aspen complaint, we are now satisfied that we have jurisdiction to consider the matter. VOA/AOA did not prevail on its counterclaim, and thus, it was not necessary for the District Court to adjudicate Aspen's complaint in intervention and the Judgment and Order closing the federal action entered on January 8, 2003, was final as to all claims.

liability based on Coast's alleged substantial noncompliance with the franchise agreement because VOA/AOA never elected to terminate the contract in the relevant time period and because no factual nexus existed between Coast's inequitable allocation claim and the alleged material breach.

The question before us is whether § 56:10-9 applies in actions brought under § 56:10-7(e). The parties have cited no New Jersey law on point and we have found no decision of the New Jersey Supreme Court, or of lower state courts, on point. We must, as a federal court asked to decide an open question of state law, look to the fundamental principles of statutory construction that would inform the New Jersey court's consideration of the issue. New Jersey abides by well-known rules of statutory construction. In New Jersey, when a statute is clear and unambiguous on its face, "the sole function of the courts is to enforce it according to its terms." Velazquez v. Jiminez, 798 A.2d 51, 61 (2002). "All terms in the statute should be accorded their normal sense and significance." Id. The "overriding objective in determining the meaning of a statute is to effectuate the legislative intent in light of the language used and the objectives sought to be achieved." McCann v. Clerk of the City of Jersey City, 771 A.2d 1123, 1128 (N.J. 2001) (quoting State v. Hoffman, 695 A.2d 236, 243 (N.J. 1997)).

Section 56:10-9 provides that "[i]t shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements

7

ancillary or collateral thereto." Giving these terms their normal meaning, as we must, we find no support for Coast's contention that the statutory defense does not apply to actions brought under § 56:10-7(e). To the contrary, § 56:10-9 provides a complete defense to a franchisor in " any action" brought under the NJFPA where the franchisee has itself committed a material breach of the franchise agreement.

The plain meaning of § 56:10-9 is consistent with the NJFPA's stated legislative policy of regulating the responsibilities of both the franchisee and the franchisor. In Westfield Centre Service, Inc. v. Cities Service Oil Co., 432 A.2d 48, 55 (N.J. 1981), the New Jersey Supreme Court construed the "good cause" language of § 56:10-5 as limiting termination of the franchise agreement under the NJFPA only in cases where the franchisee committed a breach. The New Jersey Supreme Court recognized that the plain meaning of the "good cause" provision supported the "legislative desire to protect the innocent franchisee when the termination occurs at the franchisor's convenience." Id. The same can be said of § 56:10-9 and its application to § 56:10-7(e). The statutory defense does not protect the franchisor from suit brought under § 56:10-7(e) by an "innocent franchisee."

This Court and federal district courts have recognized that § 56:10-9 allows a franchisee's substantial noncompliance to serve as a complete defense to any action brought under the NJFPA. See General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 321 n. 11 (3d Cir. 2001); In re The Matterhorn Group, Inc., Nos. 97B 41274-

97B 41278, 2002 Bankr. Lexis 1275 (Bkr. S.D.N.Y. November 15, 2002); Zaro

Licensing, Inc. v. Cinmar, Inc., 779 F.Supp. 276, 286 (S.D.N.Y. 1991) ("It is a defense to

a claim brought under the act [NJFPA] by a franchisee that the franchisee has failed to

comply substantially with the requirements imposed by the franchisor").

Coast argues that § 56:10-9 is contrary to the common law duty of good faith and

fair dealing as codified in § 56:10-7(e). Even if we assume that § 56:10-7(e) codifies the

common law duty of good faith and fair dealing and that § 56:10-9 effects a change by

providing a defense to franchisors not available at common law, we are not persuaded

that § 56:10-9 is inconsistent with or inapplicable to actions brought under § 56:10-7(e).

In New Jersey, statutes that impose duties or burdens, or establish rights, or provide

benefits not recognized by common law, are subject to strict construction. State v.

International Fed'n of Prof'l and Technical Engrs., 780 A.2d 525 (2001). It is clear that if

the statutory defense makes any change in the common law at all, it does so only with

regard to those cases where the franchisee also breached the franchise agreement. And,

as we have already discussed, § 56:10-9 so construed does not circumvent the

Legislature's intended purpose for enacting NJFPA, that is to protect the innocent

franchisee.

Accordingly, we conclude that the District Court did not err in its instruction to the

jury with regard to the NJFPA statutory defense. The District Court accurately stated that

VOA/AOA cannot be held responsible under the NJFPA if Coast did not substantially

comply with the franchise agreement. And we find that jury question 6 did not misstate the law in asking "did Defendant's (sic) prove by a preponderance of the evidence that Plaintiff failed to substantially comply with requirements of the Franchise Agreement?"

B.      The Sufficiency of the Evidence.

At trial, VOA/AOA offered evidence that Coast failed to substantially comply with its obligations under the franchise agreements in two ways. First, Coast failed to maintain the required financial arrangements for the purchase of new vehicles. Second, Coast made material misrepresentations about its financial ability when it applied to become a dealer. Coast argues that the verdict as to Coast's substantial noncompliance on VOA/AOA's first ground was against the weight of the evidence as a matter of law because Coast's method of purchasing vehicles during the bankruptcy period was found by the Appellate Division of the New Jersey Superior Court to be substantially compliant.

Our review of a jury's verdict is limited to determining whether some evidence in the record supports the jury verdict. As VOA/AOA correctly noted, jury question 6 did not require the jury to specify which one of the two bases for the defense they relied on. For our purposes we need only find the evidence sufficient as to one of the proffered bases. We agree with VOA/AOA that the New Jersey Superior Court's statement in the context of a preliminary injunction proceeding has no bearing on the facts adduced at trial in this case, and we find that there is sufficient evidence supporting VOA/AOA's theory that Coast breached the franchise agreement by failing to maintain an adequate floor plan

10

for purchasing new vehicles.

But even assuming that Coast was substantially compliant with regard to its method of purchasing vehicles, we find the evidence is sufficient to support the verdict based on Coast's substantial noncompliance in materially misrepresenting its financial ability in the dealer application. We note that Coast does not offer any argument with regard to the insufficiency of the factual evidence on the material mispresentation ground. Coast only contends that such a "breach" was not material. We disagree. Under § 56:10-6, a franchisor may reject a dealership's application to transfer a franchise based on lack of financial ability of the prospective transferee. As in transfer of dealership cases, the prospective franchisee's financial ability is a key factor in the franchisor's decision to grant a dealership in the first instance. Ensuring that a prospective dealer has the necessary financial resources to make the franchise succeed ultimately protects the trade name, image, and good will of the franchisor. See Amerada Hess Corp. v. Quinn, 362 A.2d 1258, 1266 (N.J. Super. 1976) (defining substantiality of noncompliance in terms of its effect or potential effect on the franchisor's trademark, trade name, image, and good will).

Here, Tamim Shansab and Nasir Shansab represented on the dealer application that their personal investments of $1.6 million and $400,000 respectively were unencumbered. Nowhere did they disclose that the money actually came from investors in Japan. In a separate agreement with these investors, Tamim Shansab agreed to repay $1.7 million and

to grant the investors a beneficial ownership interest in the dealership. VOA/AOA relied on Shansab's representations of his financial ability and those representations were central to VOA/AOA's decision to grant the dealership to Coast. Shansab's failure to disclose that the money he promised was not his and that investors wholly unknown to VOA/AOA had an ownership interest in the dealership constituted a material breach of the express terms of the dealership application. Thus, the evidence was sufficient for the jury to find under § 56:10-9, that Coast failed to substantially comply with the franchise dealership application.

Turning to the Dealers' Act claim, we find that, taken as a whole, all of the District Court's jury instructions regarding the Dealers' Act claim, including the charge on good faith, accurately stated the law, and that there was sufficient evidence to support the jury's finding that VOA/AOA's conduct did not constitute "coercion, intimidation, or threats of coercion or intimidation." 15 U.S.C. § 1221(e). We have held that evidence that a franchisor advanced its own interests and urged compliance with franchise obligations, without more, does not constitute coercion under the Dealers' Act. General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 326 (3d Cir. 2001). However, evidence that the franchisor's reliance on franchise obligations was pretextual or in bad faith may be sufficient to show coercion. Id. at 327. Although Coast asserts that it was VOA/AOA that pressured it to sell its franchise, Coast represented in bankruptcy proceedings that its inability to maintain adequate floor plan financing caused it to conclude that it had to sell

the dealership.  The fact that the bankruptcy proceedings were a "going concern" to VOA/AOA does not itself indicate that VOA/AOA's reliance on franchise obligations was pretextual or in bad faith.

Nor did the District Court abuse its discretion in precluding the admission of evidence as to the allegedly coercive and intimidating actions of VCI employees. Coleman v. Home Depot, Inc., 306 F.3d 1333, 1341 (3d Cir. 2002) (standard of review). Coast failed to offer any evidence to show that the actions of VCI employees should be imputed to VOA/AOA.

We have thoroughly reviewed the remaining arguments on appeal and find them to be without merit.

The judgment of the district court will be affirmed.  VOA/AOA's motion to expand the record is denied.