**FRICTION DIVISION PRODUCTS, INC., Plaintiff,**

v.

**E.I. DU PONT De NEMOURS & COMPANY, INCORPORATED, Defendant.**

**Civ. A. No. 84–218–JRR.**

United States District Court, D. Delaware.

May 27, 1987.

Samuel V. Abramo, of Abramo & Abramo, Wilmington, Del. (Steven Kreiss, of Wigman & Cohen, Arlington, Va., John S. Child, Jr., of Synnesvedt & Lechner, Philadelphia, Pa., and John S. Munday, Paoli, Pa., of counsel), for plaintiff.

Jack B. Blumenfeld, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Lawrence F. Scinto, and Lawrence A. Stahl, of Fitzpatrick, Cella, Harper & Scinto, New York City, and Robert C. Kline, and Earl L. Handley, of E.I. Du Pont de Nemours & Co., Wilmington, Del., of counsel), for defendant.

**MEMORANDUM OPINION**

ROTH, District Judge.

The latest development in this long standing patent suit is the motion of defendant E.I. DuPont de Nemours & Company, Inc. (DuPont) to compel discovery and for attorneys' fees. The motion arises from the deposition of John S. Child, Jr., one of the attorneys for plaintiff, Friction Division Products, Inc. (FDP). At the Child deposition on March 31, 1987, FDP withheld as privileged the documents subpoenaed by DuPont, and counsel for FDP instructed Mr. Child not to answer certain questions.

To understand the setting of DuPont's motion, it is necessary to go back to March 1986. On March 27, 1986, the Court, in response to a motion by plaintiff for an extension of time to file supplemental answers to DuPont's Interrogatories 8 through 12, ordered that any additional documents be filed on or before March 28, 1986. The Court went on to state in the March 27 Order that:

> Because of the numerous extensions granted to complete discovery and the Court's efforts to enforce an absolute discovery cut-off date, the Court will deny any further requests for new or additional discovery.

Following this termination of discovery, plaintiff FDP on April 9, 1986, filed a Status Report and Request for Trial, asking that trial by jury be scheduled for January 1987. DuPont responded on April 10, requesting that, in view of its previously announced intention to file for summary

judgment, the trial date be set far enough ahead to permit adequate time to hear and resolve DuPont's motion. DuPont indicated that the Motion for Summary Judgment and Opening Brief would be filed on April 14, 1986. The motion and brief were, in fact, filed on that day.

The next day, April 15, plaintiff FDP filed a Supplemental Answer to DuPont's Interrogatory No. 1, in which FDP changed the invention date for the semi-metallic claims of U.S. Patent No. 4,374,211 (the '211 Patent) from "on or about April 14, 1981" to "between March and August, 1980." Plaintiff specifically referred to documents P011111 and P010924 in making this date change. One effect of making this change was to undercut DuPont's argument in its Opening Brief in support of its motion for summary judgment that FDP's semi-metallic claims were anticipated by Nuturn's 3401 N4 (NF–10–FE) disc brake pads, which Nuturn began selling to distributors in March 1981.

On April 25, 1986, DuPont moved to strike FDP's Supplemental Answer to Interrogatory No. 1. FDP filed its opposition to DuPont's Motion to Strike on May 15, 1986. FDP justified the timing of its Supplemental Answer, changing the invention date of the semi-metallic claims, on the basis that:

FDP produced over twenty-five thousand documents in an 18–month discovery period. A further study and review of these documents, particularly FDP (Tretina and Vearling) notebooks, testing documents, and reports produced in 1984, was undertaken at the close of discovery[1] and revealed 1980 formulations and processes covered by FDP's patent.

Memorandum in Opposition to DuPont's Motion under Rules 11, 26(g) and 37, at page 3. FDP then cited the Declaration of John S. Child, Jr., attached to its Memorandum in Opposition as Exhibit O, in support of its statement that "a further study and review" had "revealed 1980 formulations and processes covered by FDP's patent."

In his Declaration, John S. Child, Jr., states that he performed a study and review of the notebooks, etc., in question. No mention is made in the Memorandum in Opposition or in the Child Declaration that anyone, other than Child, participated in the study, review, interviews, and analysis of FDP patent claims and coded formulations in the notebooks.[2]

The FDP Memorandum in Opposition goes on to state that:

The result of this investigation [*i.e.*, the Child investigation] was a decision to change the date of invention with regard to FDP patent claims covering only the semi-metallic and Kevlar fiber and pulp group of inventions. That investigation and decision, not DuPont's motion for summary judgment and asserted prior art, spurred the change in date.

Memorandum in Opposition, p. 3. FDP then once again cited the Child Declaration in support of its argument.

On June 20, 1986, oral argument was held on various motions, including DuPont's motion to strike. The endeavors which led up to the change in the invention date for the semi-metallic claims were described by counsel for FDP:

It took weeks of effort to come up with that supplemental Interrogatory response.

Mr. Child had been working on that for many, many weeks after we learned about it, because then we had to interview the inventor and, more importantly, we had to interview the people in the notebook, and they weren't the inventor. They were doing work under the direction of the inventor, but we had to interview them, to find out exactly what occurred, what process was used. That is what we did.

Transcript of Oral Argument, June 20, 1986, p. 43.

THE COURT: And you're saying it is between January and April [1986] that you developed the concept that the date

---

1. The Court ordered discovery cut-off had been October 1, 1985.

2. Child Declaration, paragraph 3. FDP Memorandum in Opposition, p. 3.

of invention on semi-metallic went back to the 1980 dates?

MR. KREISS: Yes, your Honor. That is in the affidavit that we submitted to your Honor from Mr. Child. He was the one undertaking that investigation.

*Id.* at pp. 67–68.

Oral argument on DuPont's motion for summary judgment was held on September 17, 1986. At that time, FDP's supplementation of its Answer to Interrogatory No. 1 was permitted by the Court, with an expression of reservations:

> [I]f it should later come to light that this amendment of the answer was not made in good faith, I will take appropriate steps at a later time.

> I feel some concern about the timing of the amendment to that interrogatory answer; however, on the basis of the presentation as it was made by the plaintiffs at oral argument in June, I will permit that amended answer to the interrogatory.

Transcript of Oral Argument, September 17, 1986, pp. 66–67. The Court also granted DuPont leave to take discovery as to the basis for the amendment to the answer "in order to determine whether it was made in good faith," as is provided in the Minute Order of October 3, 1986.

On January 9, 1987, the Court granted DuPont's motion for summary judgment as to the generic and organic non-asbestos claims of the '211 patent, on the ground that these claims had been anticipated by a prior publication. DuPont's motion was denied as to the semi-metallic claims because of the existence of questions of material fact. Two such questions were brought into being by moving the invention date back to the period, March–August, 1980: whether there had been a reduction to practice of prior inventions by DuPont and Nuturn before FDP's 1980 invention dates for the semi-metallic claims and whether a formulation containing about 15 percent metallic components, as did the June 10, 1980 Vearling experiment, could be characterized as semi-metallic. If it could, then the 13A Griffin Wheel formula, with 34 percent iron and steel fiber, would also apparently qualify as a semi-metallic formulation and would anticipate those claims of the '211 patent.[3]

Following the Court's ruling on DuPont's motion for summary judgment, DuPont undertook the discovery which had been permitted by the October 3 Minute Order. The deposition of John Child was noticed for March 31, 1987. DuPont subpoenaed Mr. Child and documents, including those relied on in the preparation of his Declaration, notes of the "interviews" identified in the Declaration, the documents referred to in the Declaration as having been reviewed, and any documents, including timesheets, supporting the contention that the supplemental interrogatory answer was a result of work performed from "November 1985 to April 1986," as set forth in the Declaration.

At the taking of the Child deposition on March 31, FDP withheld as privileged all the subpoenaed documents without, however, identifying them in any way. Child was also instructed by FDP counsel to refuse to answer a myriad of questions on the ground of attorney-client privilege. Such questions included ones inquiring into whose conclusions are reported in FDP's supplemental interrogatory answer containing the changed invention date, whether Child had expressed any opinion as to the accuracy of the changed date, whether Child had determined if any particular formulation came within the scope of any claim of the '211 patent, and whether Child at the time he signed his Declaration made a determination if any formulation in any

---

**3.** The June 10, 1980 Vearling experiment is recorded on Document P010924, referred to in FDP's Supplemental Answer to Interrogatory No. 1. Inventor Philip Dougherty had stated at his October 1985 deposition that a semi-metallic brake formula would contain a "great percentage" or "preponderance of metal." Dougherty Deposition, p. 665. DuPont had not considered the 13A Griffin Wheel formula to be "semi-metallic" prior to the April 15, 1986, change of invention date by FDP. DuPont did thereafter argue in its Reply Brief that the 13A Griffin Wheel formula was "semi-metallic" and that it anticipated the '211 patent's semi-metallic claims.

notebook at FDP fell within the coverage of the semi-metallic claims. The claim of privilege in this area of questioning came despite the representation by counsel for FDP at the outset of the Child deposition that Mr. Child was appearing with regard to the bona fides of the change of invention date,[4] as permitted by the Minute Order of October 3, 1986: "Defendant is permitted to take discovery as to the basis for the amendment in order to determine whether it was made in good faith."

Plaintiff FDP argues in opposition to DuPont's motion to compel that the Child Declaration was solely directed to the timeliness and alleged "spurring" of FDP's April 15, 1986 supplemental interrogatory answer, brought by DuPont's April 14, 1986, filing of its Motion for Summary Judgment and Opening Brief in support thereof. This argument, however, ignores not only the expressed concern of the Court about the basis for the change in invention date but also the statements made by FDP, particularly on June 20, 1986, in order to alleviate that concern.

There is inherent, in a decision to change an invention date, the requirement that the earlier work, cited in support of that change of date, be relevant. Subsumed in the inquiry of the Court on June 20, 1986, as to whether it was between January and April 1986 that FDP developed the concept that the date of invention on semi-metallic went back to the 1980 dates, were in fact three questions: first, whether there was evidence of experiments or tests, going back to 1980; second, whether any of this work was relevant to the semi-metallic claims of the '211 patent; and, third, whether it was not until the period January–April, 1986, that FDP realized that the invention of the semi-metallic claims extended back to 1980.

The response of counsel for FDP to this inquiry by the Court was, "Yes, your Honor. That is in the affidavit that we submitted to your Honor from Mr. Child. He was the one undertaking that investiga-

tion." In relying in this fashion on the opinion of John Child that the date of invention on the semi-metallic claims went back to 1980, plaintiff waived its attorney-client privilege as to all the inherent elements of the Court's question.

To the extent, therefore, that John Child's November 1985–April 1986 investigation, encompassing his study and review of FDP's tests, documents and reports, including the Tretina and Vearling notebooks; his interviews with Dougherty ·and Vearling; and his analysis of FDP patent claims and formulations was directed to and was an assessment of whether the invention of the semi-metallic claims could be extended back to the March–August 1980 period, the attorney-client and/or work product privilege has been waived.[5] The plaintiff's subsequent representations to the Court on May 15 and June 20, 1986, that the Child investigation is the basis for plaintiff's assertion in the Supplemental Answer to Interrogatory No. 1 that the invention date and written descriptions of the semi-metallic claims arose during the period March–August, 1980, created the opening for DuPont to investigate the foundations for those representations. In the situation here, not unlike the one ruled upon by Judge Latchum in *International Paper Company v. Fibreboard Corporation*, 63 F.R.D. 88, 92 (D.Del.1974), it would be manifestly unfair to allow FDP to make factual assertions, based on the Child investigation and Declaration, that the semi-metallic claims were invented between March and August 1980 and that PO11111 and PO10924 were written descriptions of the invention of the semi-metallic claims, and then deny DuPont an opportunity to uncover the foundation for those assertions in order to contradict them.

A party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position....

---

**4.** Deposition of John S. Child, Jr., Esq., p. 26.

**5.** It is not entirely clear from FDP's objections at the Child deposition whether objections are

based on one or the other or both of these privileges.

*Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977).

DuPont's motion to compel will be granted to permit DuPont to question John Child concerning his investigation during November 1985–April 1986 of the invention date for the semi-metallic claims of the '211 patent, including, but not limited to whether Mr. Child had determined at the time he signed his Declaration if any particular formulation in any notebook at FDP fell within the coverage of the semi-metallic claim and whether he expressed any opinion as to whether or not the dates expressed in the supplemental answer are accurate.

FDP on April 16, 1987, produced 20 documents to be inspected by the Court *in camera.* In light of the Court's decision above on the waiving of privilege, the Court makes the following rulings on these documents: The privilege has been waived on the following numbered documents which are records or notes of the contents of various formulations or tests, or discussions about them: No. 1, 3, 4, 5, 6, 8, 10, 11, 12, 15, 16, 17 and 18. The following documents contain privileged portions, and other parts, dealing with the above subject matter, for which the privilege has been waived. The waived portions are Doc. No. 2, paragraph 1; No. 7, the first paragraph on page 2; No. 13, the second paragraph; and No. 14, the notes of the first four calls, but not the fifth call, 2 pages, beginning "Phil was asked ..."

Document No. 9 is notes made by Peter Y. Lee, another attorney at Synnestvedt and Lechner and from its face does not appear to deal with the Child investigation. Privilege has not, therefore, been waived.

The redacted version of No. 19 has been checked against the complete version and the redactions seem to be appropriate. Document No. 20 appears to be the diary from which No. 19 was prepared. The encircled portions of No. 20 are the sources of the parts of No. 19 which have been produced. Privilege on the circled portions of No. 20 has, therefore, been waived.

**Attorneys' Fees.**

DuPont also requests an order, pursuant to Fed.R.Civ.P. 37(a)(4), requiring FDP or its counsel to pay DuPont's attorneys' fees in connection with the Motion to Compel and with the retaking of the Child deposition. Rule 37(a)(4) of the Federal Rules of Civil Procedure provides:

(4) *Award of expenses of motion.* If a motion is granted, the Court shall, after opportunity for hearing, require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that the circumstances make an award of expenses unjust.

The plain language of Rule 37(a)(4) expressly authorizes the Court to order the party whose conduct led to the motion to pay the moving party's "reasonable expenses incurred in obtaining the order, including attorney's fees." Such an order is *mandatory* "unless the Court finds that the opposition to the motion was [either] substantially justified or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4); *American Hangar, Inc. v. Basic Line Inc.*, 105 F.R.D. 173, 176 (D.C.Mass.1985).

Defendant's Motion to Compel was precipitated by repeated instructions to Child during his deposition not to answer any questions relating to how he reached his conclusion stated in the Child Declaration and by FDP's withholding of all the subpoenaed documents relied upon by Child in forming his conclusion and supporting the contention that the change in invention dates was as a result of work performed from November 1985 to April 1986. FDP contended that all of the above information was privileged and, thus, refused to permit its discovery.

In general, instructing a witness not to answer particular questions asked in a deposition is not a proper course of conduct under the Rules. Fed.R.Civ.P. 30(c); *International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp.*, 91 F.R.D. 277, 279 (D.D.C.

1981). However, this principle is not strictly applied in cases calling for the disclosure of trade secrets or privileged information. *Id.* Privileged information cannot be expected to be provided simply because a deponent has been asked a question relating to it.

The circumstances surrounding this case, however, lead us to conclude that the exceptions to the mandatory application of Rule 37(a)(4) should not apply. This is true in spite of the fact that plaintiff has claimed that the answers and documents shall reveal privileged information. We are not convinced that if the Child deposition were viewed in a vacuum, apart from the long history of this case prior to the Child deposition, that we would require FDP to pay DuPont's expenses. However, we cannot view it in a vacuum.

Throughout this litigation plaintiff has demonstrated an uncanny tendency to change its factual position on issues exactly at the point that it becomes likely that the previous position would not prevail.

Specifically, as to the invention date for the semi-metallic claims, FDP's position has changed three times. The Court accepted all of these changes but expressed a strong concern at the time we granted the last change, that it may not have been made in good faith. Plaintiff's actions since that time have done little to dispel this concern.

The Child Declaration was presented to the Court as plaintiff's response to our concerns over the bona fides of the new invention dates. As a result, we permitted the latest change and allowed discovery by DuPont for the *express purpose* of finding out the basis of Child's conclusions as to the new dates. Then, at the ensuing deposition of Child, FDP's counsel incredibly instructed Child not to answer questions relating to his investigation. This is the same investigation upon which FDP relied in changing the invention dates. They cannot have it both ways.

This is an example of how plaintiff has conducted itself throughout this litigation and we will not permit it to continue. Therefore, we will apply Rule 37(a)(4) and

require FDP to pay DuPont's expenses, including attorney's fees, for bringing this motion.

DuPont's request that FDP also be required to pay for the expenses incurred in retaking the Child deposition will be denied. Rule 37(a)(4) does not give this Court the power to award the costs of the deposition at which the deponent refused to answer questions unless there was an order in effect at the time compelling the deponent to answer such questions. *American Hangar,* 105 F.R.D. at 175. If this Order is disobeyed, we will order the payment of such expenses by plaintiff at that time.

In order to avoid any further delays in the discovery process, the parties are directed to reschedule the Child deposition at their earliest convenience and to hold that deposition in the Courthouse. In this way, should any further dispute arise while the deposition is taking place, the Court will be able to promptly resolve the issue.