MERISANT COMPANY, Plaintiff,

v.

McNEIL NUTRITIONALS, LLC, and McNeil–PPC, Inc., Defendants.

Civil Action No. 04–5504.

United States District Court, E.D. Pennsylvania.

April 9, 2007.

Abraham C. Reich, Gregory B. Williams, Beth Lillian Domenick, Fox Rothschild O'Brien & Frankel LLP, Philadelphia, PA, Eugene F. Assaf, Gregg F. Locascio, Jeffrey G. Landis, Jonathan Daniel Brightbill, Karen M. Robinson, Kenneth S. Clark, Valerie Gutmann, Kirkland & Ellis LLP, Washington, DC, Jordan M. Heinz, Thomas M. Monagan, III, Kirkland & Ellis LLP, Chicago, IL, for Plaintiff.

Alfred W. Putnam, Jr., Andrea L. D'Ambra, David J. Kessler, Drinker Biddle & Reath LLP, Philadelphia, PA, Brian N. Lasky, Clay J. Pierce, Jeffrey D. Rotenberg, Jennifer L. Higgins, Melissa A. Mandrgoc, Steven A. Zalesin, Alexis Gander Deise, David G. Sewell, Karla G. Sanchez, Rosa E. Son, Travis J. Tu, Patterson Belknap Webb & Tyler LLP, New York, NY, for Defendants.

### Memorandum and Order

PRATTER, District Judge.

Merisant Company, Inc. ("Merisant") alleges that McNeil Nutritionals, LLC and McNeil–PPC, Inc. (collectively, "McNeil") engaged in false and misleading advertising with respect to its Splenda No Calorie Sweetener product in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and the Pennsylvania common law of unfair competition. A jury trial is scheduled to begin on April 9, 2007. The parties have engaged in extensive discovery activities and recently exchanged pretrial memoranda, leading to their submission of numerous motions *in limine,* in which they argue, among other things, that certain evidence should be excluded under Rules 402 and 403 of the Federal Rules of Evidence.

### FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this action was recited in detail in the Court's March 2, 2007 *Memorandum and Opinion*

(Docket No. 152), and will not be repeated here. Any factual and procedural history that is relevant to the pending motions will be discussed below.

## STANDARD

■ "Under the Federal Rules of Evidence, subject to certain limitations, all evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence." *Forrest v. Beloit Corp.*, 424 F.3d 344, 355 (3d Cir.2005); *see* Fed.R.Evid. 401, 402. Pursuant to Rule 403, a court may nonetheless exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Forrest*, 424 F.3d at 355 (*quoting* Fed.R.Evid. 403). The Court of Appeals for the Third Circuit has described Rule 403 as an " 'umbrella rule' spanning the whole of the Federal Rules of Evidence," and as such district courts must apply Rule 403 "in tandem with other Federal Rules under which evidence would be admissible." *Id.* (*quoting Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir.2002)). A district court must articulate the Rule 403 balancing—the probative value of potentially relevant evidence must be "carefully balanced, pursuant to Rule 403, against its possible prejudicial effect." *Id.* at 356. " 'Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility.' " *Id. (quoting Coleman*, 306 F.3d at 1343). In the Third Circuit there is a "strong presumption" that relevant evidence should be admitted. *Id.* A party arguing that evidence should be excluded under Rule 403 must show that "the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." *Id. (quoting Coleman*, 306 F.3d at 1343–44). However, " 'prejudice does not simply mean damage to the opponent's cause.' " *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir.2002) (*quoting* 1 McCormick on Evidence § 185 at 645 (John W. Strong, et al.

eds., 5th ed.1999)). Only "unfair prejudice" can tip the scales in favor of inadmissibility:

> The ... prejudice against which the law guards [is] ... *unfair* prejudice—... prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found.... Prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.

*Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 525 (3d Cir.2003) (*quoting Wagenmann v. Adams*, 829 F.2d 196, 217 (1st Cir.1987)).

## DISCUSSION

A. *McNeil's Motion to Exclude Inflammatory and Irrelevant Evidence Concerning the Sucralose Manufacturing Process* (Docket No. 164)

■ McNeil seeks to exclude inflammatory and irrelevant statements regarding the manufacturing process for Sucralose and Splenda. McNeil argues that Merisant intends to improperly refer to certain "toxic" or "hazardous" chemicals that may be used in the manufacturing process for Splenda. In addition, McNeil fears that Merisant intends to overdramatize McNeil's chemical process for manufacturing Splenda in explaining such process to the jury.

It is beyond question that the details of McNeil's manufacturing process for Splenda is relevant in this case inasmuch as Merisant's literal falsity claim rests substantially on its argument that Splenda's "sugar-like" taste results from Splenda's manufacturing process and not from its sugar origins. A detailed, yet fair, reasonable and accurate description of the manufacturing process for Splenda is therefore appropriate. The Court finds that McNeil will not suffer any unfair prejudice as a result of this evidence being introduced.

However, the Court acknowledges what seems to be one of McNeil's main concerns here, namely, that any reference to "toxic" chemicals would improperly impugn Splenda's safety for human consumption. Merisant does not argue that Splenda is unsafe, and any attempt to imply as much through

the use of gratuitous, cumulative and inflammatory language, such as applying the labels "toxic" or "hazardous" (or synonyms therefor), is impermissible. Therefore, McNeil's motion will be granted in part and denied in part.

B. *Merisant's Motion in limine No. 6 to Exclude any Evidence or Argument Regarding Government "Approval" of Sucrose or Splenda's Advertising or Marketing* (Docket No. 180)

 Merisant seeks to exclude evidence that any government agency, specifically the U.S. Food & Drug Administration ("FDA"), has "approved" McNeil's marketing or advertising for Splenda. Specifically, Merisant argues that McNeil's intends to introduce evidence that the FDA "approved" certain labeling, use of words or concepts, or packaging for Splenda.

McNeil argues that such information is relevant to rebut Merisant's argument that McNeil engaged in an "evolutionary" marketing campaign. In this regard, McNeil intends to argue that in 1990, when it initially approached the FDA about approving Splenda for certain consumer uses, McNeil portrayed Splenda as capitalizing on its sugar "origins," and that McNeil has consistently focused on such origins ever since.

 The Court agrees with McNeil that some evidence concerning McNeil's Splenda-related FDA proceedings is both relevant and entirely appropriate, specifically to rebut Merisant's claims about "evolving" advertising. In addition, such evidence is relevant to explain to the jury that the FDA has approved Splenda (along with Equal and NutraSweet) for various consumer uses.[1] Merisant will suffer no unfair prejudice if this relevant, probative and entirely appropriate

evidence is admitted in an appropriate context. Accordingly, Merisant's motion will be denied.

C. *McNeil's Motion to Exclude Third Party Statements Characterizing McNeil's Splenda Advertising* (Docket No. 163) *and Motion to Exclude Anecdotal Evidence of Instances of Confusion Regarding McNeil's Advertising* (Docket No. 168)

In its Motion to Exclude Third Party Statements Characterizing McNeil's Splenda Advertising, McNeil seeks to exclude news articles, statements by a sugar-related trade association, statements by other lobbying groups, and other statements that criticize Splenda's advertising. Although McNeil did not style its motion as seeking to exclude specific, enumerated exhibits that Merisant intends to introduce, McNeil refers to Merisant's Pretrial Memorandum, in which Merisant cites statements by a Pepsi employee, Pl. Pretrial Mem. ¶ 76, the trade group Calorie Control Council, *id.*, journalist Jon Entine, *id.* ¶ 77, the executive director of the Center for Science in the Public Interest, *id.* ¶ 89, and certain others, *id.* ¶ 90. McNeil argues that such statements are inadmissible hearsay under Rule 802—because the "proffered statements have no conceivable purpose other than to prove the truth of the matter they assert"—and are unduly prejudicial to McNeil. Def. Mot. 2 (Docket No. 163).

In its Motion to Exclude Anecdotal Evidence of Instances of Confusion Regarding McNeil's Advertising, McNeil seeks to exclude "anecdotal evidence" of consumer confusion under Rules 402, 403, 801 and 802 of the Federal Rules of Evidence because, according to McNeil, such "evidence" is not

1. However, the Court notes that any attempted introduction of evidence regarding McNeil's Splenda-related FDA activities to suggest or imply that the FDA "approved" McNeil's marketing and advertising of Splenda at issue in this case would be improper. McNeil acknowledges that the FDA has no jurisdiction to "approve" the marketing or advertising materials at issue in this case, and that it did not submit such marketing and advertising materials for the FDA's review or "approval." In addition, it is beyond dispute that a consumer product that is approved

for consumer use by the FDA can still be marketed or advertised in a manner that violates the Lanham Act. Because this case is a false advertising case, one might think that these facts might end this particular discussion. Should McNeil attempt to fashion an argument that by reviewing and not objecting to certain labeling for Splenda—which pertained to technical information, including Splenda's ingredients—the FDA somehow tacitly approved the language of McNeil's advertising, the Court will give the jury a limiting instruction as may be appropriate.

probative of the issue of whether a "substantial" number of people are confused, is misleading, confusing and prejudicial, and is hearsay. Similar to its motion to exclude all "third party statements," McNeil's "anecdotal evidence" motion does not seek to exclude specific exhibits—it seeks to exclude all "anecdotal" evidence. However, McNeil actually seeks to exclude a broad range of evidence.

For example, McNeil points to a statement by journalist Ann Curry made on the air during the *Today Show* on NBC. According to McNeil, in the referenced video clip, Ms. Curry picks up a Splenda product and asks, "is it any more natural than the other two?" In addition, McNeil objects to a statement made on the air by Bob Bowersox of QVC, and a memorandum following a meeting between representatives of McNeil and Pepsi that attributes a certain perception to a Pepsi executive. In addition, McNeil seeks to exclude "anecdotal individual consumer comments" that were made to McNeil's customer service phone lines. Later in its motion, McNeil also cites a news article from the Ottowa Sun.[2]

The Court will decline at this juncture to exclude broad categories of evidence, such as "all third party statements characterizing McNeil's advertising" or all "anecdotal evidence of instances of consumer confusion," and will similarly decline to exclude specific exhibits within such broad categories for all conceivable purposes for which they may be introduced. Therefore, both of McNeil's motions will be denied. However, the Court sees fit to note some general observations on this general subject because it appears inevitable that specific evidence will be presented at trial that will need to be addressed in this regard.

■ First, McNeil has asserted an affirmative defense of laches, arguing that Merisant "unreasonably delayed" in bringing this lawsuit against McNeil and that McNeil has suffered prejudice as a result of this delay. One of Merisant's arguments that it did not in fact "delay," or that any such delay was reasonable, is that McNeil was aware that its advertising for Splenda had been perceived by consumers as misleading or confusing, and that McNeil did nothing to stop this perception. Merisant argues that certain "third-party statements" and "anecdotal evidence" constitute evidence that McNeil was on "notice" that consumers were confused. The Court notes, however, any evidence that post-dates Merisant's filing of the Complaint in this action cannot constitute notice for laches purposes, since the relevant time period for laches purposes is runs from the time when Merisant became aware of a potential problem to the time it asserted its claims. Therefore, any evidence that Merisant intends to introduce—newspaper articles, statements by media or trade groups, etc.—which post-dates the filing of its Complaint in this case, must be admissible for another reason, and must not be inadmissible hearsay.[3]

In addition, Merisant argues that some items of evidence, such as the remark by Ann Curry, are examples of instances of widely disseminated consumer confusion that McNeil did not seek to correct. Evidence of this nature, Merisant argues, shows that McNeil intended to mislead consumers (or at least intended to let consumer misconcep-

---

**2.** As noted above, McNeil separately sought to exclude as evidence another news article in moving to exclude "all third party statements characterizing Splenda's advertising."

**3.** Under the Federal Rules of Evidence, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed.R.Evid. 802.

Courts have noted that "[g]enerally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted" and statements in newspapers by individuals other than the article's author "often constitute double hearsay." *Green v. Baca*, 226 F.R.D. 624, 637 (C.D.Cal. 2005) (granting defendant's motion to exclude newspaper articles, finding that the two newspaper articles lack circumstantial guarantees of trustworthiness and were not the most probative evidence available); *May v. Cooperman*, 780 F.2d 240, 262 n. 10 (3d Cir.1985) (Becker, J., dissenting) ("Ordinarily, when offered to prove the truth of the matters stated therein, newspaper articles are held inadmissible as hearsay.").

tions fester), which would tend to undercut McNeil's assertion of the equitable defense of laches. *See Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592 (3d Cir.1972) (citing the "equitable maxim" that "he who comes into equity must come with clean hands," which "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"); *W. Indian Sea Island Cotton Ass'n v. Threadtex, Inc.*, 761 F.Supp. 1041, 1051 (S.D.N.Y. 1991) ("In order to prevail on a laches defense, a defendant must establish his own good faith. Thus, a defendant claiming laches 'must be able to demonstrate the absence of any intent to confuse and deceive the public . . . .' ") (citations omitted).

At this juncture, the Court cannot know for sure whether Merisant will choose to "cherry pick" instances where McNeil allegedly failed to "correct" consumer misconceptions. If it does, McNeil will, of course, be permitted to introduce otherwise admissible evidence contesting those claims, and will be permitted to introduce evidence of instances where it did seek to correct perceived consumer misconceptions. The Court will evaluate the relevance of such evidence in context should either party choose to introduce it. In this regard, however, both parties must remain mindful that cumulative evidence is excludable, and evidence that is too far afield or risks jury confusion will be evaluated critically by the Court.

▮▮▮ The Court notes that Merisant also argued that certain "third party statements" or "anecdotal" evidence constitute evidence of "actual confusion" for Lanham Act purposes. The Court is wary of admitting such

evidence for this purpose. For example, in order to establish that Ann Curry was "actually" confused by Splenda advertising, it would be appropriate to call Ms. Curry to testify at trial to that affect, yet Merisant did not include her on its pretrial list of fact witnesses. Absent presenting Ms. Curry's testimony at trial, it is impossible to know whether Ms. Curry was "actually" confused, or whether the producer on *The Today Show* who handed Ms. Curry her script on that particular morning was "actually" confused, or whether the NBC intern who created the script at the producer's directive was "actually" confused, or none of the above.[4]

D. *Merisant's Motion* in limine *No. 1 to Exclude the Testimony of Brian Perkins* (Docket No. 171)

▮▮▮ Merisant moves to exclude testimony from Brian Perkins, who has been an employee of Johnson & Johnson, McNeil's corporate parent, since this case began. Merisant objects to Mr. Perkins testifying at trial because McNeil did not disclose Mr. Perkins' existence, role in the company, or involvement in events giving rise to this lawsuit until his name appeared in McNeil's Pretrial Memorandum one month before trial in this matter is scheduled to begin. Mr. Perkins' name did not appear on any of McNeil's disclosures, discovery responses or pleadings produced in this case, and Mr. Perkins was not deposed in this case. Merisant argues that McNeil's nondisclosure of Mr. Perkins warrants precluding his testimony at trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure[5] and Rules 402 and

---

4. There is no doubt that *actual* evidence of "actual" confusion is probative in Lanham Act cases. Merisant argues that certain out-of-court statements prove "actual" confusion, but such statements "fall into two categories—those exhibiting confusion and those proclaiming it." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 719–720 (3d Cir.2004). As our Court of Appeals has noted, "[s]tatements of the first type (Dr. A says 'We have plenty of Advicor' but points to Altocor samples) are not hearsay because they are not submitted for their truth; indeed, it is their falsity that shows the speaker's confusion." *Id.* Further, "[s]tatements of the second type (Dr. B says 'I find these names confusing.') are admissible as 'statements of the declarant's then existing state of mind' " under Fed.R.Evid. 803(3). *Id.*

5. This rule provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). Courts in this Circuit consider four factors in determining whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case

403 of the Federal Rules of Evidence. Merisant claims that Mr. Perkins's testimony should be excluded because Merisant would be prejudiced if he were allowed to testify, Merisant is unable to cure these issues, and argues that barring Mr. Perkins' testimony would have no effect on the orderly and efficient trial.

The Court will deny Merisant's motion and will grant Merisant leave to depose Mr. Perkins in advance of his taking the witness stand at trial, for a period of time not to exceed two (2) hours. Should McNeil decide not to make Mr. Perkins available for a deposition, and make available previously undisclosed documents relating to Mr. Perkins on issues as to which he is expected to testify, the Court will grant Merisant leave to renew this motion.

E. *Merisant's Motion* in limine *No. 3 to Exclude "Consumer Perceptions About Splenda" Report* (Docket No. 178)

■ Merisant seeks to exclude McNeil from introducing an August 13, 2003 report entitled, "Consumer Perceptions About Splenda." Merisant contends that this report was created to "review" research discussing consumer perceptions that Splenda was natural, and "concludes" that Splenda's advertising is not communicating a "natural" message. The Report also "concludes" that consumers understand that Splenda is not truly natural, yet some consumers perceive Splenda as being "more natural" than other sweeteners. Merisant claims that McNeil has denied Merisant discovery regarding the origins and development of the report on the basis of attorney-client privilege and should not be permitted to "cherry pick" the report's favorable "conclusions" for use at trial. Pl. Mot. No. 3 at 1 (Docket No. 178).

McNeil advances the misplaced argument that because the Report is not attorney work product, it is admissible. However, the question is not whether the Report is work product but whether McNeil improperly denied Merisant discovery with respect to the origins and development of the Report. That the Report is not work product is clear, and McNeil acknowledges as much by freely providing it to Merisant.

McNeil also claims that it has not selectively invoked the attorney work product doctrine to advance its case. McNeil argues that it has appropriately disclosed the Report, while protecting clearly privileged conversations among various McNeil personnel and in-house counsel regarding the Report.

The Report was created by Anne Haudrich. McNeil claims that Eric Paul, who maintains a business role at McNeil, directed Ms. Haudrich to prepare the report. During Ms. Haudrich's deposition, McNeil's counsel, despite clearly stating that he would permit Merisant's counsel to question Ms. Haudrich about the "preparation," 3d. K. Clark Decl. Ex. 3 at 268:11, or the "genesis" of the Report, *id.* 269:18, objected when Merisant's counsel asked why Mr. Paul wanted Ms. Haudrich to create the document. *Id.* 270:3–271:1. Merisant argues that the Report was prepared at the direction of counsel, which McNeil denies. Ms. Haudrich testified that while Mr. Paul directed her to create the Report, her understanding was that she was to prepare the Report for "a conversation with our counsel." *Id.* 236:3–4. She testified further that Mr. Paul wanted the report so that "we could discuss it with our counsel," *id.* 236:5–8, and she confirmed that such a conversation with counsel occurred, *id.* 236:9–13. Ms. Haudrich further testified that in her view, the report was primarily being prepared for a discussion with counsel rather than as an ordinary course business

or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir.2000); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997) (affirming exclusion of plaintiff's expert witness because producing expert after the expert discovery deadline constituted a "flagrant disregard" of the court's pretrial order, and defendant would be prejudiced). However, "the importance of the excluded testimony" should be considered. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977). "The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of wilful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* at 905 (*quoting Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir.1977)).

document. *Id.* 236:14–22. She later stated that Mr. Paul told her that Mark Sievers, an in-house counsel at Johnson & Johnson, had asked for the Report to be prepared. *Id.* 255:18–22.

■ The attorney-client privilege cannot be used as both a "shield" and a "sword." *See Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 222 (3d Cir.2006) (holding that the plaintiff could not rely upon the legal advice it received for the purpose of negating its scienter without permitting the defendant the opportunity to probe the surrounding circumstances and substance of that advice). A party cannot make factual assertions based on a supposedly privileged document, and then deny its adversary an opportunity to uncover the foundation for those assertions in order to contradict them. *See Friction Div. Prods., Inc. v. E.I. Du Pont de Nemours & Co.,* 117 F.R.D. 535, 538 (D.Del.1987) (stating that such conduct would be "manifestly unfair" to the party against whom such privilege is asserted); *Int'l Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 92 (D.Del.1974) (holding same).

■ In a similar vein, a party cannot introduce a document as evidence while denying the opponent sufficient discovery with respect to the "surrounding circumstances and substance" of the document. *Berckeley,* 455 F.3d at 222. That is exactly what Merisant claims McNeil has done here. From the parties' submissions to the Court on this issue, the Court concludes that Merisant received sufficient discovery regarding the "genesis" of the Haudrich Report to permit Merisant to pursue vigorous cross-examination of McNeil witnesses concerning the Haudrich Report and its origins and use.

Merisant also argues that the Report is inadmissible hearsay because McNeil intends to offer it to prove the truth of the matter asserted, i.e., that consumers were not confused about Splenda, and no hearsay exception applies. The Court declines to rule on this portion of Merisant's motion at this time because it is not clear for what purpose McNeil would seek to introduce this evidence, if at all.

**F. Motion in limine No. 10 to Exclude Pleadings from an Unrelated National Advertising Division Matter Regarding Shugr Brand Sweetener (Docket No. 175)**

■ In September 2005, Merisant initiated a challenge in the National Advertising Division of the Counsel of Better Business Bureaus ("NAD") alleging that the advertising for "Shugr," another artificial sweetener that uses sucralose, inaccurately claimed that it was natural. Merisant argues that any documents relating to Shugr, including pleadings or letters from the NAD proceedings, are irrelevant, have no probative value, and would be prejudicial to Merisant if submitted as evidence.

McNeil argues that evidence relating to the Shugr proceedings is relevant to its laches defense because such evidence would show that Merisant did not "unreasonably delay" in filing an action in the NAD against the manufacturer of Shugr. Merisant challenged the Shugr advertising approximately six months after Shugr's launch. McNeil claims that, "[t]o state the obvious, a comparison of these chronologies casts significant doubt on Merisant's arguments against laches, and thus are clearly relevant to this proceeding." Def. Mem. Opp'n 2 (Docket No. 197).

The Court does not fully agree with McNeil's characterizations and sees no reason to permit introduction of the NAD filings or of the particulars concerning the advertising for Shugr beyond, perhaps, making brief contrasting reference to Merisant's actions as part of the laches defense arguments. Evidence concerning advertising for Shugr is irrelevant—or is, at least, only marginally relevant—to this case. McNeil has ample leeway to present evidence in support of its argument that Merisant "unreasonably delayed" in filing the present suit by focusing on Merisant's actions leading up to its filing of this case, and should not need to venture far afield into irrelevant matters.

The jury in this case will have enough cud to chew by focusing on the events that led to Merisant's decision to file this particular law suit. The Court will carefully scrutinize whether any evidence McNeil seeks to offer about the Shugr proceedings could confuse

the jury with evidence of a wholly unrelated action, concerning a unrelated product made by a manufacturer with no connection to this lawsuit. Of concern to the Court is the risk that such evidence would unduly delay this proceeding as a complete presentation of evidence regarding the "Shugr" would likely entail presenting a detailed account of facts underlying the Shugr advertising campaign, the allegedly false claims at issue, the comparative merits of Merisant's action there and here, among other evidence. The Court acknowledges that the bar for admitting relevant evidence is a low one, but McNeil cannot seriously contend that evidence concerning the Shugr advertising itself is "highly probative" of any issue in this case. For the reasons states above, Merisant's motion will be granted, with leave granted to McNeil to present an offer of proof as to precisely what evidence relating to the "Shugr" circumstances it would present on the laches issue.

G. *Merisant's Motion* in limine *No. 12 to Exclude Evidence or Argument Regarding Unrelated Trade Dress Litigation (Docket No. 176)*

■ In February 2004, nine months before this litigation commenced, one of the McNeil defendants and another subsidiary of Johnson & Johnson brought suit against Merisant and a Merisant affiliate in district court in Puerto Rico. In that suit, McNeil alleged that the trade dress for "Same With Sugar," a product marketed by a Merisant affiliate exclusively in Puerto Rico, was "virtually identical" to Splenda's trade dress. In July 2004, the district court preliminarily enjoined Merisant from using the challenged packaging. The parties subsequently resolved their differences, and the packaging for Same With Sugar was changed so that it no longer infringed on Splenda's trade dress. Merisant argues that any evidence of this unrelated trade dress action is irrelevant to the its claims in this lawsuit—primarily, because the trade dress litigation did not involve claims of false or misleading advertising involving Splenda—and that introduction of such evidence would be unfairly prejudicial to Merisant.

McNeil argues that the trade dress litigation "highlights widespread advertising practices in the artificial sweetener industry," because the facts underlying the litigation allegedly show that Merisant also adopted a "natural" positioning. However, the Court has already held that McNeil is entitled to present evidence that Merisant's packaging and advertising for Same With Sugar is an example of "custom" within the artificial sweetener industry. *See* Apr. 5, 2007 Order (Docket No. 227). Therefore, McNeil's argument that it must also introduce evidence of the trade dress litigation itself on this point is unavailing.

McNeil also seeks to introduce testimony and counsel's arguments from the trade dress litigation in an effort to prove that Merisant has conceded that there is an "important distinction" between Splenda's claim that it is "from sugar" and Same With Sugar's advertising stating that it is made "with sugar." McNeil has not specifically argued that such evidence is a "party admission" yet it seeks to introduce this evidence for exactly that purpose. If McNeil persists that such evidence from the trade dress litigation is necessary, particularly with respect to the legal position Merisant may have taken during the pendency of that litigation, outside the presence of the jury McNeil shall present such evidence (including specific reference to the statements at issue and the context for them) and argument to the Court. In this regard, McNeil must establish whether such evidence would constitute a party admission, or other recognized evidentiary category.

H. *Merisant's Out–of–Time Motion* in limine *No. 14 to Exclude Post–Discovery Splenda Advertising* (Docket No. 192)

■ On March 23, 2007 McNeil added to its list of trial exhibits two television commercials that it had not previously produced during discovery. One of these commercials does not utilize the tagline "made from sugar so it tastes like sugar," despite McNeil's assertion during the summary judgment phase of these proceedings that

Since the retail launch in September 2000, all television commercials for Splenda No

Calorie Sweetener—including the launch television commercial that first aired in January 2001—have referenced the sugar origins of Splenda and have included either the tagline that Splenda is "made from sugar so it tastes like sugar" or the similar claim that "Splenda tastes like sugar because it's made from sugar."

McNeil Statement of Facts ¶ 51. In addition, although both commercials include shots of the Splenda package with the "made from sugar, tastes like sugar" seal visible, neither one utilizes those phrases in any other form. Merisant argues that these commercials should be barred from use at trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure because McNeil submitted them after the period for discovery ended and did not supplement discovery, which it is bound to do under Rule 26(e)(2). Merisant argues that it will be unable to respond to any use of this evidence because it was denied discovery, is unable to cure this absence, and argues that McNeil's failure to disclose these commercials constitutes bad faith.

McNeil claims that, despite the fact that one of these commercials omits the tagline that has appeared on *every* single commercial since Splenda's launch in 2000, these commercials do not represent a new direction in Splenda advertising. McNeil further claims that it produced the exhibits "in good faith and shortly after the new commercials were first broadcast." Def. Mem. Opp'n 1 (Docket No. 220). Of course, notably absent from McNeil's response are any specific dates as to when this commercial was conceived, when it was filmed and produced,[6] and why McNeil chose to release it after it had moved for summary judgment claiming that every television commercial for Splenda included its ubiquitous tagline.[7]

The Court finds McNeil's statements that these two commercials "do not differ in any meaningful way from the fourteen Splenda commercials previously produced," Def. Mem. Opp'n 4 (Docket No. 220), are "substantively the same," *id.*, and are "substan-tively indistinguishable" from its prior commercials, *id.*, to be troubling in light of the representations McNeil made to the Court regarding the content of its television advertising at the summary judgment phase of these proceedings. In support of its laches defense at the summary judgment phase, McNeil argued that it would suffer "untold prejudice" if it were required to disrupt its "made from sugar" and "tastes like sugar" positioning, yet a few months after McNeil presented that argument it changed its commercials omitting its tagline in its commercials for the first time since Splenda's launch.

The Court acknowledges that, when McNeil prepared its summary judgment papers in November 2006, all television commercials that had aired *at that time* may have included the taglines at issue in this case. The Court presided over oral arguments on McNeil's motion for summary judgment on January 30, 2007, and, at that time, McNeil did not retract or correct its prior statements regarding its television advertising. The Court rendered its opinion on summary judgment on March 2, 2007, and again, at that time, McNeil did not retract or correct its prior statements. Yet just a few weeks after the Court ruled on McNeil's summary judgment motion, McNeil released these two new commercials.

However, as noted above, the standard for excluding evidence under Rule 37 is an exacting one. *See supra* note 5. Due to McNeil's disclosure of these commercials days before trial is set to begin, the Court does not doubt that Merisant may be surprised by their inclusion in McNeil's exhibit list, but because these commercials amount to a total of 45 seconds of new evidence (plus related story boards), Merisant should be able to review and evaluate these ads and incorporate them into its trial strategy, which presumably already includes an evaluation of at least 14 other commercials. Because McNeil intends to introduce multiple other commercials at trial, these additional commercials would not disrupt the order or efficiency of trial. Ac-

---

6. McNeil states that the new commercials were created more than eight months after discovery closed. Discovery in this case closed on July 14, 2006. *See* Docket No. 79.

7. In a footnote, McNeil states that the new commercials "in no way contradict the statements by the company's President and counsel." Def. Mem. Opp'n 2 n. 2 (Docket No. 220).

cordingly, these commercials will not be excluded under Rule 37.

Merisant's arguments that these commercials should be excluded under Rules 402 and 403 of the Federal Rules of Evidence similarly fall short. There can be no question that these commercials are relevant to Merisant's false advertising claims in this case, and highly probative of the issues to be presented to the jury. No unfair prejudice to Merisant will result if such evidence is introduced at trial. For the reasons stated above, Merisant's motion will be denied.

CONCLUSION

An appropriate order follows.

### ORDER

**AND NOW,** this 9th day of April, 2007, upon consideration of the various motions *in limine* submitted by the parties, and the responses thereto, **IT IS ORDERED** that:

1. With respect to McNeil's Motion to Exclude Inflammatory and Irrelevant Evidence Concerning the Sucralose Manufacturing Process (Docket No. 164),

a. The Court finds that a detailed, yet fair, reasonable and accurate presentation of evidence concerning the manufacturing process for Splenda and/or Sucralose is relevant to Merisant's claims and McNeil's affirmative defenses in this proceeding; and

b. The Court finds that introduction of such evidence will not be unfairly prejudicial to McNeil, *except* that any gratuitous, cumulative or inflammatory language, such as applying the labels "toxic" or "hazardous" (or symptoms therefor), would be unfairly prejudicial, and is **INADMISSIBLE;** therefore

c. Motion to Exclude Inflammatory and Irrelevant Evidence Concerning the Sucralose Manufacturing Process (Docket No. 164) is **DENIED** in part and **GRANTED** in part as described herein.

2. With respect to Merisant's Motion *in limine* No. 6 to Exclude Evidence or Argument Regarding Government "Approval" of Sucralose or Splenda's Advertising or Marketing (Docket No. 180),

a. The Court finds that evidence concerning McNeil's Splenda-related, U.S. Food &

Drug Administration proceedings is relevant to Merisant's claims and McNeil's affirmative defenses in this proceeding; and

b. The Court finds that introduction of such evidence will not be unfairly prejudicial to Merisant; therefore

c. Merisant's Motion *in limine* No. 6 to Exclude Evidence or Argument Regarding Government "Approval" of Sucralose or Splenda's Advertising or Marketing (Docket No. 180) is **DENIED** as explained in the accompanying Memorandum.

3. McNeil's Motion to Exclude Third Party Statements Characterizing McNeil's Splenda Advertising (Docket No. 163) is **DENIED WITHOUT PREJUDICE.**

4. McNeil's Motion to Exclude Anecdotal Evidence of Instances of Confusion Regarding McNeil's Advertising (Docket No. 168) is **DENIED WITHOUT PREJUDICE.**

5. With respect to Merisant's Motion *in limine* No. 1 to Exclude Testimony of Brian Perkins (Docket No. 171),

a. Merisant's Motion *in limine* No. 1 to Exclude Testimony of Brian Perkins (Docket No. 171) is **DENIED WITHOUT PREJUDICE;** and

b. Merisant is **GRANTED** leave to depose Mr. Perkins in advance of his taking the witness stand at trial, for a period of time not to exceed two (2) hours, provided that Mr. Perkins' documents shall have been made accessible to Plaintiff's counsel who shall have received such documents at least twenty-four (24) hours prior to Mr. Perkins' deposition.

6. Merisant's Motion *in limine* No. 3 to Exclude "Consumer Perceptions about Splenda" Report (Docket No. 178) is **DENIED WITHOUT PREJUDICE.**

7. With respect to Merisant's Motion *in limine* No. 10 to Exclude Pleadings from an Unrelated National Advertising Division Matter Regarding *Shugr* Brand Sweetener (Docket No. 175),

a. The Court finds that pleadings from Merisant's proceedings before the National Advertising Division Matter Regarding *Shugr* Brand Sweetener are irrelevant to

Merisant's claims and McNeil's affirmative defenses in this proceeding; and

b. The Court finds that including such evidence would confuse the jury and cause undue delay to an orderly and efficient trial; therefore

c. Merisant's Motion *in limine* No. 10 to Exclude Pleadings from an Unrelated National Advertising Division Matter Regarding *Shugr* Brand Sweetener (Docket No. 175) is **GRANTED,** however,

d. McNeil is **GRANTED** leave to present an offer of proof as to precisely what evidence relating the "Shugr" circumstances it would present on the laches issue.

8. With respect to Merisant's Motion *in limine* No. 12 to Exclude Evidence or Argument Regarding Unrelated Trade Dress Litigation (Docket No. 176) is **DENIED WITHOUT PREJUDICE.**

9. With respect to Merisant's Out–of–Time Motion in limine to Exclude Post–Discovery Splenda Advertising (Docket No. 192),

a. The Court finds that barring post-discovery Splenda advertising for use at trial pursuant to Fed.R.Civ.P. 37(c)(1) is not warranted; and

b. The Court finds that the post-discovery Splenda advertising at issue, namely the two television commercials identified in Merisant's Motion, may well be relevant to Merisant's claims and McNeil's affirmative defenses in this proceeding; and

c. The Court finds that introduction of such evidence will not be unfairly prejudicial to Merisant; and, therefore

d. Merisant's Out–of–Time Motion in limine to Exclude Post–Discovery Splenda Advertising (Docket No. 192) is **DENIED.**